CASE 71—PETITION EQUITY—OCTOBER 13.

## Johnson vs. Johnson, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. It is a well settled rule that the words "*heirs of the body,*" "*heirs lawfully begotten of the body,*" and other similar expressions, are appropriate words of limitation, and must be construed as creating an estate tail, (which, by our statute, is converted into a fee-simple,) unless there be something else in the deed or will from which a reasonable inference can be drawn that the words were used in a sense different from their legal and technical signification. (11 *B. Mon.*, 33; 10 *Ib.*, 58; 14 *Ib.*, 144, *and other subsequent cases.*)

2. There is a well settled distinction between the import and technical effect of the word "*children,*" and the words, "*heirs of the body,*" as these expressions are used in wills. (*Powell on Devises, pp.* 494, 500, 508, 459.)

3. A testatrix in 1835 devised land, slaves, and personalty to her two nephews, in trust for the separate use of her daughter for and during her natural life; and further provided, that after the death of her daughter, the property aforesaid should be held in trust by her said nephews for the use of her three granddaughters, (naming them,) "*and their heirs lawfully begotten of their bodies.*" One of the granddaughters mar-

ried in 1839, and died in 1853, leaving children. The daughter of the testatrix died in 1856. *Held*—in a suit brought by the husband of the deceased granddaughter, claiming, as survivor, her interest in the slaves and personalty—that his wife took a vested remainder in fee-simple therein, and, the remainder having vested prior to the act of 1846, he, as survivor, is entitled to her share thereof.

WORTHINGTON & JOHNSTON, for appellant, cited 12 *B. Mon.*, 234; 5 *Ib.*, 116; 14 *Ib.*, 145–6; 1 *Eq. Lead. Cases*, 412, *ed. of 1852*; 9 *Henning's Statutes at Large*, 226; 10*th sec. act of* 1796, 1 *M. & B.*, 442; 1 *Litt. Laws of Ky.*, 565; 2 *Blackstone*, 113; 2 *Kent*, 353–4; *Williams on Personal Property*, 204–5, 302; 10 *B. Mon.*, 56; *Ib.*, 104; 15 *Pick.*, 104, (114;) 1 *Sumner*, 359; 3 *Kelly*, 551, (564;) 25 *Ala.*, 285; 8 *Gratt.*, 346; 18 *Ala.*, 400; 10 *B. Mon.*, 193; 1 *Jarman on Wills*, 726–7; 12 *B. Mon.*, 40, 43; 13 *Ib.*, 454; *Civil Code, sec.* 40; 4 *Kent.*, 29; 9 *B. Mon.*, 321; 7 *Dana*, 11; *Duval vs. Ramsey, MS. opin. Oct.*, 1857.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

Mary Vance, by her will which was admitted to record in the year 1835, devised certain property, consisting of land, slaves, and personalty, to her two nephews, Vance and White, in trust for the separate use of her daughter, Ruth G. Bowen, for and during her natural life.

The fifth clause of the will is as follows: "It is my will and desire, that after the death of my daughter, Ruth G. Bowen, the property herein devised, both real, personal, and mixed, for the use of my daughter, Ruth G. Bowen, shall be held in trust by my said nephews, Samuel D. Vance and Robert K. White, for the use of my granddaughters, Sarah Ann Bowen, *Mary Vance Bowen*, and Martha Matilda Bowen, *and their heirs lawfully begotten of their bodies.*"

The appellant married Mary Vance Bowen in 1839, and she died in 1853. Ruth G. Bowen died in 1856.

This action was brought by the appellant, who claims, that under the will of Mary Vance his late wife took a vested remainder in fee-simple in the slaves and personalty which passed by the will, and that he, as the survivor of his wife, is entitled to her share of the estate.

The chancellor decided, however, that the wife of the appellant took under the will only an estate for life in the property

devised, with remainder in fee to her children, who are the appellees.

So that the controversy must turn exclusively upon the construction to be given to the clause of the will which has been quoted.

It is a well settled rule, established by numerous adjudications of this court, and recognized and acted upon in several very recent cases, that the words " *heirs of the body*," " *heirs lawfully begotten of the body*," and other similar expressions, are appropriate words of limitation, and must be construed as creating an estate tail, (which, by our statute, is converted into a fee-simple,) unless there be something else in the deed or will from which a reasonable inference can be drawn that the words were used in a sense different from their legal and technical signification. (*Lachland's heirs vs. Downing's executors*, 11 *B. Mon.*, 33 ; *Prescott vs. Prescott's heirs*, 10 *B. Mon.*, 58 ; *Brown vs. Alden*, 14 *B. Mon.*, 144.)

In the case of *Duval vs. Ramsey's heirs*, (*MS. opin.* 1857,) the words of the deed were : " I do by these presents give unto my daughter, Jane E. Duval, *and to her heirs, or the heirs of her body forever*, the following negroes," &c. It was held that the children of the grantee did not take as purchasers under the deed, but that their mother took an absolute estate in fee-simple.

In the case of *Watson and wife vs. Coleman, &c.*, (*MS. opin.* 1858,) the devise of the slave was to Mary Hardy, *and the heirs of her body*. The words were construed as creating an estate tail, there being nothing in the will to indicate that the testator intended to use them in a different sense.

In the case of *Boggess, &c., vs. Cunningham*, (*decided at the present term*,) the words of the devise were : " I give and bequeath to my daughter, Elizabeth Boggess, *and the heirs of her body*, sixty acres of land," &c. These words were also held, for the same reason, to be words of limitation and not of purchase, and to create an estate tail in the devisee, Mrs. Boggess.

And in the case of *Kent's adm'r vs. Malone, &c.*, the devise was as follows : "I give and bequeath unto my beloved daughter, Patsey Malone, a negro girl named Silvey, *to her and her issue forever*." It was held that the word *issue*, as used in this

devise, was not less extensive in its import than "heirs of the body;" that the word embraces the whole line of lineal descendants, and creates an estate tail, the testator having failed to indicate elsewhere in the will that he used the words in a different sense, or intended to confer upon his daughter an estate for life only, with remainder over to her children.

If the principle deducible from these cases be applied to the devise under consideration, it is clear that the words " and their heirs lawfully begotten of their bodies," must be regarded, in the language of the chancellor, as "peculiarly, especially, and strikingly appropriate to devise an estate tail," and must be construed as having that effect, there being nothing in the will to indicate that the testatrix used the words in a different sense.

But the chancellor was of opinion that the case of *Carr and wife vs. Estill* (16 *B. Mon.*, 313) had virtually abrogated this rule of construction, and had established the principle that the words used in this devise, and all similar expressions occurring in a will, must be construed as operating of themselves to create a life estate in the devisee, with a contingent remainder over to the children of the devisee; that the expression, "heirs lawfully begotten of their bodies," is as strong in import, and as appropriate to embrace the appellees, (who were unborn at the date of the will,) as the term children would have been. And his conclusion was, that under this will the grandchildren of the testatrix took only a vested remainder for life, and the appellees, (as heirs lawfully begotten of Mary Vance Bowen,) took a fee-simple contingent remainder in their mother's share of the estate, and the petition of the appellant was dismissed.

Although it must be admitted that the case of *Carr, &c., vs. Estill*, extended the doctrine which favors the effectuation of the supposed intention of the testator beyond the limits which had been defined by the English cases, yet it is obvious that the principle upon which that decision was made to rest does not apply to the case before us.

The devise in *Carr, &c., vs. Estill*, was to " Mary Baker Didlake *and her children.*" At the date of the devise, the devisee had no children, but afterwards had one child, and it was held

that the words of the devise manifested a clear intent that the *children* of M. B. Didlake should take as purchasers; but as there were no such children in being at the time of the devise, the only rational deduction was, that the testator intended to give a life estate to M. B. Didlake, remainder to the children she might thereafter have.

Now there is a well settled distinction between the import and technical effect of the word "*children*" and the words "*heirs of the body*," as these expressions are used in wills. It is true that, according to the English cases, the word children is sometimes construed as a word of limitation and creative of an estate tail. But it is laid down by Powell, in his work on Devises, that a devise to A., and her children, and their heirs, (she having children,) confers on them a joint estate in fee. (*p.* 500.) "But with regard to a devise simply to a person and his issue, no doubt can, at this day, be raised as to its adequacy to create an estate tail; and it may be observed that it is not, as in the case of a devise to a person *and his children*, dependent on, or, it seems, in the least degree influenced by, the fact of there being or not being issue of the devisee living at the time of the devise, or at any other period." (*Ib.*, 508.) And so, "a devise to A. and the heirs of his body vests an estate tail in A. Upon such a case, indeed, no question can arise; for where the contrary hypothesis has ever been advanced, the argument for changing the construction of the words has always been founded on some expressions or circumstances of intention appearing in the context." (*Ib.*, 459.)

It is unnecessary to cite other authorities upon this point. It is very clear that the view of the chancellor, that the expressions, "heirs lawfully begotten of their bodies," are either as strong in import, or as appropriate to embrace the children of the devisee, (whether born or unborn,) as the word "*children*" would have been, cannot be maintained upon either English or American authority. The former words "embrace descendants of every degree, existent at every period," and have, therefore, been held to be the correct and technical terms to be used in the creation of an estate tail. Not so with the word children, which is generally held to embrace immediate descendants

only.  It is not a correct or technical expression for the creation of an estate tail, and whenever such an effect has been given to the word by the courts of England, it has been with the view of giving effect to the supposed intention of the testator.  (*Wild's case, cited in Powell on Devises*, 494.)

We are of opinion, therefore, that the wife of the appellant took a vested remainder in fee-simple in the slaves and personalty devised by the will of the testatrix, and as this remainder vested prior to the act of 1846, the appellant, as survivor of his wife, is entitled to her share of the property.  Neither the trustees named in the will, nor the administrator of Mrs. Johnson, were necessary parties to this proceeding.

The judgment is therefore reversed, and the cause remanded for further proceedings in conformity with this opinion.