[No. 6,633.—Department One.]

## C. S. THOMAS ET AL. *v.* J. L. MOODY.

AGENCY—FRAUD.—The defendant having a claim against S. & S., and know-
ing them to be insolvent, authorized them to buy wool, expressly agreeing
to furnish the money to pay for it, the wool to be consigned to defendant,
who was to sell the same, and after deducting expenses, commissions, and
cost, credit S. & S. with the balance. Accordingly, S. & S. bought wool
from the plaintiffs and their assignors, who supposed that they were deal-
ing with S. & S. alone. The defendant received and sold the wool, and
without paying for the same, credited S. & S. on their indebtedness with the
net proceeds, but without deducting the cost. *Held*, that the facts constitut-
ed an agency in S. & S. sufficient to charge the defendant.

APPEAL from a judgment for the defendant, in the Nine-
teenth District Court, City and County of San Francisco.
WHEELER, J.

After the decision, the respondent filed his petition that the
appeal be reheard in Bank, and the application was denied.

*J. M. Seawell*, and *Henry Edgerton*, for Appellants.

Although the plaintiffs and their assignors gave credit to
Strowbridge & Son, yet they are not for that reason precluded
from charging the defendant. Where a vendor discovers subse-
quently to a sale that the vendee was an agent for another in
the purchase, he may charge either at his election, although at
the time he relied solely upon the credit of the agent for pay-
ment. (*Thompson* v. *Davenport*, 9 Barn. & C. 78; 2 Smith's
Leading Cases, 347 to 358; *Raymond* v. *Crown and Eagle
Mills*, 2 Met., 319; Smith on Contracts, 400.)

Appellants admit that their right to charge the defendant is
subject to the qualification that if the state of accounts between
Strowbridge & Son and the defendant had been altered, so that
the defendant would be unjustly subjected to a loss by the
plaintiffs' election to charge him, then plaintiffs' right of election
is lost. But in this case no money has been paid, or any prop-
erty parted with by defendant. The defendant could only be
exonerated by payment. (Smith on Contracts, 405; Civ. Code,
§ 2335; *Waring* v. *Favence*, 1 Camp. 85; *Nelson* v. *Powell*, 3
Doug. 400; *Ruthbone* v. *Tucker*, 15 Wend. 498.)

Defendant expressly promised to furnish the money to pay for

the wool. This promise was for the benefit of the plaintiffs and their assignors, and they can sue upon it. This proposition is conclusive of the whole case. (Pomeroy on Remedies, etc., § 139; *Morgan* v. *Overman S. M. Co.* 37 Cal. 534; *Dingeldein* v. *R. R. Co.* 37 N. Y. 575; *Barber* v. *Bradley,* 42 id. 316; *Coster* v. *Albany,* 43 id. 399; *Muller* v. *Maxwell,* 2 Bosw. 355; *Bristow* v. *Lane,* 21 Ill. 194; *Hardy* v. *Blazer,* 29 Ind. 226; *Been* v. *Robinson,* 9 Pa. St. 299.)

*Selden S. Wright,* and *Stanly, Stoney & Hayes,* for Respondent.

Plaintiffs and their assignors " gave the credit *solely* to Strowbridge & Son, and did not rely upon the defendant for payment of said purchase-price, nor any part thereof." If at the time the plaintiffs and their assignors thus acted they knew that Strowbridge & Son were the agents of the defendant, or knew of the facts which are claimed do constitute Stowbridge & Son such agents, and yet " gave the credit *solely* to Strowbridge & Son," they can have no claim against the defendant.

" He to whom the credit is knowingly and exclusively given is the proper person who incurs liability, whether he be the principal or the agent." (Story on Agency, § 288.) "Wherever exclusive credit is given to an agent in any transaction for a known principal, there the party must abide by his election, *and he cannot afterward hold the principal liable therefor.*" (Id. § 289.)

Ross, J.:

In the year 1869, the firm of Strowbridge & Son was formed, and engaged in the business of buying and selling wool—their place of business being in the city of Sacramento. From 1869 to about the month of February, 1871, the firm of Farish & Co. was engaged in the business of selling wool on commission at the city of San Francisco, and received wool from Strowbridge & Son, to be sold on commission. Farish & Co. also made advances to Strowbridge & Son on their wool—the advances being made by means of drafts drawn by the latter on Farish & Co. These drafts were drawn and paid as Strowbridge & Son

wanted the money, but not with reference to any particular consignment or consignments. In or about the month of February, 1871, Farish & Co. failed, and were immediately succeeded in business by the defendant Moody, under the firm name of Moody & Farish, who has ever since continued in the same business at the place theretofore occupied by Farish & Co. When the defendant thus succeeded to the business of Farish & Co., he entered into an agreement with Strowbridge, & Son to transact business with them upon the same terms and in the same manner that Farish & Co. had done, and he did so deal with them until about the first day of September, 1872. At the time last mentioned the defendant ascertained that Strowbridge & Son had become indebted to him, on account of their dealings with him, in an amount exceeding ten thousand dollars; and, becoming dissatisfied, and ascertaining that fact, he thereupon entered into a new arrangement with Strowbridge & Son, by which it was agreed that the latter should go on and buy wool as before; that the defendant would furnish the money to pay for it; that it was to be paid by means of drafts drawn by them on him; that such drafts should not exceed the cost of the wool; that they should consign to him all the wool bought by them; that the defendant would sell it, and after deducting the cost of the wool, and all charges thereon for commission, freight, drayage, and storage, would apply the proceeds of sale to the payment of the indebtedness of Strowbridge & Son to the defendant.

At the time of making this last-mentioned agreement, Strowbridge & Son were irresponsible, and had no means to pay for the wools purchased or to be purchased by them, and this the defendant knew. And Strowbridge & Son, after the making of said last-mentioned agreement, relied solely upon the defendant's promise to furnish the money to pay for the wool bought by them, and would not have made any purchases thereafter but for that promise. Under said last agreement, Strowbridge & Son proceeded to and did buy wool from various persons in the counties of Yolo, Colusa, and Sacramento, and continued so to do until on or about May 23rd, 1873. Among the wools so purchased, they bought, on the 20th of May, 1873, from the plaintiffs, 60½ bales, at the agreed price of $3,696 in gold coin; on

the 22nd of May, 1873, from J. P. Lowell, 103 bales and 17
sacks, at the agreed price of $5,768.64 in gold coin; on the 20th
of May, 1873, from D. H. Cantrell, 13 bales, at the agreed price
of $721 in gold coin; on the 13th of May, 1873, of P. O'Brien,
41 bales, at the agreed price of $2,559.69 in gold coin; and on
the 10th of May, 1873, of Charles C. Hubbard, 38 bales, at the
agreed price of $2,209.56 in gold coin. By the terms of said
sale the purchase-price was due and payable on the delivery of
the wool to Strowbridge & Son. All of the wool so sold was,
prior to the 25th day of May, 1873, delivered by the sellers
thereof to Strowbridge & Son, and by them to the defendant.
Prior to the purchase by Strowbridge & Son of any of this
wool, and after the making of the last agreement between them
and defendant, the latter frequently wrote them letters, in which
he gave them directions and instructions as to what wool they
should purchase, and the price they should pay therefor, and
also directing them to send him the bills of lading or shipping
receipts for the wool, and to consign it to him. Strowbridge &
Son notified the defendant of the purchases of the wool in ques-
tion, as well as of all other purchases of wool made by them, as
soon as the purchases were made; and after the receipt of the
wool by the defendant, Strowbridge & Son exercised no control
over it, but the same was managed and disposed of by the de-
fendant at his discretion, without any interference on the part of
Strowbridge & Son.

Prior to the commencement of this action, the defendant sold
all of the wool in question, and after deducting the expenses of
sale, including his commissions for selling it, credited the bal-
ance of the proceeds (with the exception of the two payments
hereinafter mentioned) to Strowbridge & Son, on account of their
indebtedness to him, and appropriated the same to his (defend-
ant's) own use.

Neither plaintiffs nor Lowell nor Hubbard have ever been
paid anything for or on account of the wool sold by them; but
Cantrell was paid $121 on account of his, and O'Brien was paid
$1,559.69 on account. Before the institution of this action, the
plaintiffs succeeded, by assignment, to all of the rights of Lowell,
Cantrell, O'Brien, and Hubbard in the premises.

In making the respective sales of the wool in controversy,

plaintiffs and their assignors gave credit solely to Strowbridge & Son, and did not rely upon the defendant for payment of the purchase-money.   Indeed, it does not appear that at the time of sale any of the sellers knew that the defendant had any connection with the transaction.   Strowbridge & Son drew drafts on the defendant for the amounts due for the wool, which drafts the defendant, on May 23rd, 1873, dishonored, and therefore Strowbridge & Son suspended.

On these facts, all of which appear from the judgment roll, it is plain that the plaintiffs are entitled to judgment.   That one man can select another, whom he knows to be utterly insolvent, to purchase, under his directions and upon his promise to furnish the money to pay for them, the goods of innocent third persons, and then, after the goods have been so purchased and have come into his hands, can retain them or their proceeds, and at the same time refuse to pay the money, is a proposition which can no more be sustained in law than in morals.

In this case, the defendant authorized Strowbridge & Son to buy the wool of the plaintiffs and their assignors, expressly agreeing to furnish the money to pay for it.   He knew that Strowbridge & Son were irresponsible, and had no means to pay for the wool.   They, of course, knew that fact also, and, to their credit be it said, would not have bought any but for defendant's promise to furnish the money with which to pay for it.   Defendant instructed them what wool to buy, and at what price.   He directed them to consign it to him; and after he received it, he managed and disposed of it at his discretion, without any interference on their part.

These facts constituted an agency sufficient to charge the defendant.   It is true, that neither the plaintiffs nor any of their assignors knew anything of any of these circumstances at the time of selling the wool..   They did not know the defendant in the matter at all, but supposed they were dealing with Strowbridge & Son alone.   But that does not exempt the defendant from liability.   (*Raymond* v. *C. and E. Mills*, 2 Met. 334; Story on Agency, § 291; 2 Smith's Leading Cases, 347 to 358.) Nor does the fact that the defendant credited Strowbridge & Son's indebtedness to him with the amount of the proceeds of the wool affect the question, for the reason, among others, that

he had no right, even under the terms of the agreement between himself and them, to do any such thing.   By the express terms of that agreement, he was to furnish the money to pay for the wool.   It was to be sent to him ; he was to sell it ; and *after deducting the cost of the wool*, and all charges thereon for commission, freight, drayage, and storage, was to apply the proceeds to the payment of the indebtedness of Strowbridge & Son.   Instead of conforming to this agreement, he sold the wool, deducted from the proceeds of sale his commissions and the other expenses of sale, and then credited the balance, *including* the cost of the wool, on the indebtedness of Strowbridge & Son, and put the whole of it in his pocket.

Whence comes the right of the defendant to make the property of the plaintiffs and their assignors pay the debt of Strowbridge & Son?   Certainly not by reason of the contract between himself and them ; certainly not in morals, and it is equally certain that it does not exist in law.   As the case now stands, not only has the defendant got the property of the plaintiffs without its having been paid for, but he succeeded in obtaining it by procuring Strowbridge & Son, whom he knew to be wholly irresponsible, to buy it, upon his own promise to furnish the money with which to pay for it, and thus magnified the fraud by which he seeks to reap the benefit of the plaintiffs' property by making Strowbridge & Son the innocent instruments in its perpetration.   Defendant cannot thus take advantage of his own wrong.   (*Hill* v. *Perrott*, 3 Taunt. 275.)

Judgment reversed, and cause remanded to the Court below, with directions to enter judgment on the findings in favor of the plaintiffs and against the defendant, for the sum of $13,268.28 in United States gold coin, with legal interest thereon in like gold coin, from the 1st day of June, 1873, and costs of suit.

McKEE, J., and McKINSTRY, J., concurred.