NANCY J. HUNTER v. IRA M. COBE and Another.[1]

October 18, 1901.

Nos. 12,628—(6).

**Principal and Agent—Ratification.**

Ratification of the act of another, performed in the assumed capacity of an agent, though wholly without precedent authority, creates the relation of principal and agent, and the principal becomes bound by the act to the same extent as if it had been done by his previous authorization.

**Same—Disaffirmance after Assent.**

A principal is not at liberty to disaffirm if he has assented to the act of an agent, after being informed of all of the material facts of a transaction in which the agent has exceeded his authority.

**Dismissal of Case Error.**

Held, in the case at bar, which was an action to recover damages arising out of a breach of an alleged contract to sell and assign a leasehold interest in real property, that the trial court erred when it dismissed the case upon the ground that plaintiff had failed to show the making of a valid contract to sell and assign such interest.

Appeal by plaintiff from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Reversed.

*A. Y. Merrill,* for appellant.

*M. H. Boutelle* and *N. H. Chase,* for respondents.

COLLINS, J.

This action was brought to recover damages arising out of a

[1] Reported in 87 N. W. 612.

breach of an alleged contract to sell, assign, and convey a certain leasehold interest in real property situated in the city of Minneapolis. At a trial before a jury and at the close of plaintiff's testimony, defendants' motion to dismiss, on the ground that the testimony failed to show any right to recover, was granted. This appeal is from an order denying a motion for a new trial.

The real question in the case is whether, as claimed by defendants, plaintiff's evidence failed to establish the making of a valid contract to assign and convey the interest involved, which was evidenced by a written lease for a term of years. The facts were that some time prior to September 1, 1899, the defendants verbally authorized one Marchant, a real-estate broker, to sell several parcels of land in the city of Minneapolis which they then owned, and also to sell their leasehold interest in question. This agent had no written authority to enter into any contract whatsoever, and therefore any written contract made by him would be void, under G. S. 1894, § 4215. This stands conceded; but the contention of plaintiff's counsel is that, while the authority to make the sale or assignment was not in writing, that made by Mr. Marchant was approved, ratified, and agreed to by defendants, in writing, by means of certain letters which passed between these two parties, and also by reason of certain acts of defendants, to which reference will be made,—all subsequent to the day Marchant, who resided in Minneapolis, was verbally given prices and authorized to make sales by defendants, who were residents of Chicago.

These letters were introduced in evidence. One bears date of September 3, 1899, in which Marchant informed defendants that he had sold the property in question so as to net $500 to them. He also advised them that as soon as the purchaser returned to town, which would be in a few days, he would write full particulars. This letter also referred to other property not involved here. September 8, Marchant again wrote, referring to his earlier letter, and stating to defendants that he had received no reply. In this letter he advised them that he had received earnest money on account of this particular sale. As a matter of fact, he had been paid by the purchaser (who was acting through an agent) $150 on account of the same. September 11, the defendants

acknowledged, by letter, Marchant's previous communications, and said, in reference to this sale:

"We accept the proposition of $500. Kindly advise us as to the name of the grantee, etc."

This letter referred also to other real property belonging to defendants in Marchant's hands for sale. On receipt of their letter of acceptance, Marchant, as agent for defendants, executed and delivered to plaintiff's agent a written contract of sale, and the latter accepted it in writing, and agreed to purchase on the terms therein specified, namely, cash on delivery of the assignment. September 20, 1899, the defendants again wrote Marchant, saying that they had received his letter containing the offer of $500 net; that they had written accepting the same, but had received no answer; and further:

"Will you kindly acquaint us with the purchaser's name, the terms of sale, and amount of deposit made with you on said sale?"

September 22, Marchant replied to this letter, informing defendants that he had been waiting for Mr. Thwing, who was defendants' attorney in Minneapolis, "to get the title fixed up before sending in the name of the purchaser"; also that he had just been informed by Mr. Thwing that the title was now perfect, and that the latter would prepare the assignment of the lease,

"And send you for execution, leaving the name out, as I could not see my party to-day and get the name he wished inserted. The property was sold for cash, and will be paid when the papers are here for delivery. The ground rent will have to be adjusted to date of transfer. Nothing will be said about the rents, which are paid to October 1. Nothing was said about taxes. Some eight months of the year have gone, but I don't think they will say anything about them."

In answer to this letter, defendants wrote to Marchant on September 25, as follows:

"Referring to the closing up of sale of the Second street leasehold, would say that the executed assignment of lease was forwarded to George Thwing, Esq., on Saturday, and we presume that all papers necessary in the transfer were to-day in his hands."

This letter referred to six other pieces of property which had been sold by Marchant as defendants' agent, and also contained the following paragraph relating to the property in question:

"P. F. No. 211, 109, 110 Second street south sold for $500.00, which, in accordance with a talk had by you with the writer some weeks ago, is net. Sale not closed." And also: "This, we think, covers all the transaction in which you have had any part. We assume that all the sales as above quoted will be carried out, and take pleasure in inclosing our check for $75 on account of same. Trusting that this will be satisfactory, we remain."

It was shown upon the trial that on September 23, two days prior to the writing of the last-mentioned letter, and probably immediately upon the receipt of Marchant's letter of September 22, defendants caused an assignment of their leasehold interest in this property to be made in due form, except that the name of the purchaser was purposely omitted. This instrument they forwarded to their attorney, Mr. Thwing, evidently that it might be delivered to Mr. Marchant or to the proposed purchaser; evidently, also, that their agent's sale might be consummated. It was handed to the latter by attorney Thwing, that the purchaser might inspect it. Her agent did examine it, and, at Marchant's request, returned it on Saturday, after banking hours, with the understanding that he was to call on the following Monday, and pay over the agreed consideration. He called on Monday, but for some undisclosed reason a delivery was refused. Immediately afterwards a sale was made to a third party, his name inserted in the written assignment intended for plaintiff, and a delivery made to him. This action was then brought, and we are of opinion that the lower court erred when dismissing it. We have stated the contents of the letters fully, that their force might be clearly realized.

Admitting that the written contract entered into between Marchant and plaintiff's agent was void and inoperative, because of the statute, there was an abundance of evidence to warrant the jury in finding that the defendants, with full knowledge of all of the material facts, had ratified the sale made by their agent, and had, in fact, made it their own. Marchant had been given verbal

authority to sell the property. He obtained an offer for it of $500 net to defendants, and so advised them. They accepted the offer, and, after being notified that for a few days he would be unable to furnish the name of the purchaser, executed and placed in the hands of their attorney an assignment of their leasehold interest in the property, acknowledged in due form, and entirely complete, except that this name was intentionally omitted, and then informed Marchant of this act, obviously that he might complete the sale by causing the money to be paid and the assignment delivered. We say "obviously," because the attorney, Thwing, at once placed the instrument in Marchant's hands for examination by the purchaser's agent.

If any of the acts of the agent, Marchant, were unauthorized, because his authority to sell or contract was not in writing, such acts were sufficiently ratified by the defendants after they knew all of the material facts. Marchant concealed nothing from them. He acted in good faith, and so did defendants, until after the assignment had been placed in the hands of their attorney for delivery to the purchaser, whose name they apparently did not care to know. They could have insisted upon knowing to whom the sale was being made, and they could also waive this information, as they did, by sending on the incomplete instrument. Further, it is quite apparent that had the correspondence been between plaintiff or her agent and defendants, instead of between the latter and Marchant, the statute would have been satisfied, and a sufficient contract made. It would be of that familiar class of cases whereby a valid contract for the sale of real property is established by several writings instead of one.

Ratification of the act of another performed in the assumed capacity of an agent, though wholly without any precedent authority, creates the relation of principal and agent, and the former becomes bound by the act to the same extent as if it had been done by a previous authorization. A principal is not at liberty to disaffirm if he has assented to the act of an agent after being informed of all of the material facts of a transaction in which the agent has exceeded his authority. 1 Warvelle, Vend. 220. See also Goss v. Stevens, 32 Minn. 472, 21 N. W. 549; Dana v.

Turlay, 38 Minn. 106, 35 N. W. 860.  The assent or ratification in this particular instance was in writing, and is found plainly and unequivocally set forth in defendants' letters, to say nothing of the assignment which was duly executed and forwarded to defendants' attorney.  In some jurisdictions this, in itself, would be held sufficient to satisfy the statute of frauds.  See note to Kopp v. Reiter, 146 Ill. 437, 34 N. E. 942.  But we are not required to pass upon this question in disposing of plaintiff's appeal.

It is specially urged by counsel for defendants that the minds of the parties did not meet, and there was no valid agreement, because the name of the purchaser was not disclosed to the defendants prior to the time they repudiated the agreement.  This contention is without merit, for a reason heretofore given.  But no such objection was made at the time of the repudiation.  Had it been, there is no doubt but that the name would have been promptly given, and the objection rendered of no moment.  It would have been removed and obviated.  See Duclos v. Cunningham, 102 N. Y. 678, 6 N. E. 790.  Parol evidence was admissible to show for whom plaintiff's agent was acting.  Goss v. Stevens, supra.  The case should have been submitted to the jury as the evidence stood when plaintiff rested.

Order reversed and new trial granted.