## JOHN P. JONES v. L. J. BLAIR.[1]

### June 29, 1917.

### Nos. 20,341—(146).

**Vendor and purchaser — undisclosed principal — specific performance.**
>   Plaintiff gave a real estate agent the "exclusive sale" of certain lands. The agent made a contract of sale, as vendor, with defendant and another, as vendees, and received the whole of the purchase price, except

[1] Reported in 163 N. W. 523.

what was to be paid in the future upon a note secured by purchase money mortgage to be delivered upon delivery of deed conveying good title. The agent informed plaintiff of the sale and the terms thereof, but remitted only $500, leaving a balance of $1,397.60 still coming to plaintiff from the $2,500 received by the agent. But plaintiff was not aware that defendant had made the full down payment. Subsequently $300 more was paid by the agent to plaintiff. After plaintiff learned the true facts concerning the payment to the agent, he brought this action against one of the vendees, this defendant, for specific performance of the contract so made by his agent. Defendant counterclaimed for like relief. *Held*:

(1) Plaintiff by bringing this action adopted the contract made by the agent in his behalf. It is the only contract upon which an action can be based. He is to be considered as the undisclosed principal. No point can now be raised by plaintiff from the fact that the contract had two vendees. He elected to assert a cause of action against the one only and that one does not object.

(2) By bringing this action, to specifically enforce the contract, after full knowledge of what this agent had done, plaintiff ratified and adopted his acts *in toto*, and must bear the loss arising from the agent's misappropriation of part of the money paid by the vendee, even though the agent had no authority under the written contract of employment to make a contract of sale or receive the purchase money.

Action in the district court for Kanabec county for specific performance of a land contract. The case was tried before Nethaway, J., who made findings and ordered judgment in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*F. R. Allen* and *S. R. Child*, for appellant.

*J. C. King*, *P. S. Olson* and *E. L. McMillan*, for respondent.

HOLT, J.

Action by a vendor for specific performance, and a counterclaim for the same relief by the vendee. Findings were made awarding defendant a decree. From an order denying a new trial plaintiff appeals.

The complaint alleged plaintiff's ownership of 240 acres of land in Kanabec county; that while such owner he, in September, 1913, agreed to convey the same to defendant for the sum of $5,802.50, $500 of which was then paid, $2,042.30 to be paid as soon as plaintiff could furnish

defendant a marketable title, and the balance of $3,260 to be payable in 10 years with 6 per cent interest, payable annually, to be evidenced by defendant's note secured by a purchase money mortgage on the land; that in December, 1914, the title of plaintiff was perfected; and that plaintiff has repeatedly since demanded the balance of the cash payment, but that no part thereof has been paid except $300 July 7, 1915. Plaintiff prays specific performance; that the amount due him from defendant for the purchase money be determined and judgment therefor rendered, which shall constitute a first lien on the premises; and that the land be sold and the proceeds applied in payment of the judgment. The answer admitted the contract, substantially as set forth in the complaint, alleging the payment of $2,542.30, and that, after such payment, defendant entered into possession of the land, cleared, broke and improved the same, and erected buildings thereon; that defendant is ready and willing to execute and deliver the note and mortgage described by plaintiff upon receipt of the deed from him. Defendant also averred that, at the time he purchased this land from plaintiff, one J. E. Cravens was the latter's agent duly authorized to sell the same and receive for plaintiff the money paid thereon, that plaintiff at all times acknowledged Cravens as his agent for the purposes stated, acquiesced in, and ratified, all his acts. Defendant asked judgment that plaintiff be ordered to execute a deed to defendant conveying the land to him and for other appropriate relief. The reply was a general denial.

From what has been stated it seems plain that both parties rely for a cause of action upon a subsisting binding contract between plaintiff and defendant for the sale of the land by the former and its purchase by the latter. There was no contract other than the one made by Cravens in his own name as vendor to defendant and his brother as vendees. This was in writing, as was also the authority from plaintiff to J. E. Cravens, doing business as Cravens Land Company, giving "Cravens Land Company the exclusive sale of the above described property until October 1, 1913." The contract so made by Cravens, as vendor, must therefore be held adopted and ratified by plaintiff as the undisclosed principal. That the written contract varied from the one alleged in the pleadings in that there was another vendee, de-

fendant's brother Carl, must be considered waived by both parties. If plaintiff saw fit to hold one vendee alone to the bargain, and such vendee did not object, the variance may be ignored.

The question then comes down to this: Who is in default or refuses to perform this contract, relied on by both parties? The terms of the contract are no longer a matter of contention. They were admitted to be as set forth in the answer when the trial began, except that the interest on deferred payments was payable annually. The court found that defendant has paid all, save what was to be evidenced by the note and mortgage; that he stood ready and willing to deliver the note and mortgage as provided; and that plaintiff refused to convey.

The original employment of Cravens probably did not authorize him to make the contract of sale with Blair within the rule stated in Jackson v. Badger, 35 Minn. 52, 26 N. W. 908, and Peterson v. O'Connor, 106 Minn. 470, 119 N. W. 243, 130 Am. St. 618. The authority went no further perhaps than to find a purchaser. For the purposes of this decision we shall assume that the agency to find a purchaser did not authorize Cravens to receive the purchase price. No doubt plaintiff could have repudiated the sale and all of Cravens' doings if he had seen fit so to do when he discovered the true situation. But this he did not do. The limitations of an agent's authority, under the rule applied in Stillman v. Fitzgerald, 37 Minn. 186, 33 N. W. 564; Larson v. O'Hara, 98 Minn. 71, 107 N. W. 821, 116 Am. St. 342, 8 Ann. Cas. 849; and Stein v. Waite, 126 Minn. 157, 148 N. W. 49, is beside the question here. For, as stated, plaintiff's cause of action is predicated upon a subsisting contract, and the only contract was the one Cravens made for plaintiff with defendant. Having come into court asking to have this contract enforced against defendant, he should not, on appeal, be heard to deny its existence or binding force.

Nor do we think he is in position now to assert that Cravens had no authority to receive the payment of the purchase price for him. Cravens made the contract on September 2, 1913, when defendant paid $2,500 thereon. Three days later Cravens wrote plaintiff that he had sold the farm. On the thirteenth of the same month, he wrote again, inclosing a deed for plaintiff to execute with check for $500, stating the balance of the money would be ready, and that he would see

that plaintiff got his money and the mortgage. He also gave the exact price the land was sold for, the balance cash down of $1,397.60 still coming to plaintiff, after deducting the share he, Cravens, was to receive and the note and mortgage of $3,260 was to be given. The deed to defendant was executed and the note and mortgage to plaintiff; but the instruments were not delivered on account of some difficulty over plaintiff's title. The defects therein were finally cured by a judgment, entered in December, 1914, quieting the title. In the meantime Cravens had used the purchase money he had received, and began making excuses to gain time to make it up. He undoubtedly tried to mislead plaintiff, who became impatient and employed an attorney. A great deal of correspondence was thereupon had with Cravens. Finally on July 7, 1915, the attorney went to Mora, Cravens' place of business, and a tentative adjustment was made; Cravens then assuming to act for defendant. The agreement was expressly made subject to the approval of the parties hereto. Cravens then paid $300 to plaintiff's attorney. This sum was duly paid over to plaintiff. The attempted adjustment was sanctioned by one Olsen, signing as attorney for defendant. When in September, 1915, defendant learned of the tentative adjustment, he immediately informed plaintiff and his attorney that Cravens was not his agent and repudiated what had been attempted. Neither Cravens nor Olsen had authority to act for defendant. He also informed plaintiff of the cash payment of $2,500 to Cravens, when the sale contract was made September 2, 1913. Thereafter with complete knowledge of what the agent, whom he had authorized to negotiate for a sale of the land, had done in the premises, and without offering to restore the $800 he had received of defendant's money, plaintiff deliberately elects to stand upon and adopt the contract Cravens had made, as seller, and brings this action, pressing it to trial months after notice of the situation and opportunity to ascertain the true facts.

Plaintiff cannot adopt in part and repudiate in part the deal which Cravens made. The transaction is not severable, it must stand or fall as an entirety. Defendant made no contract with plaintiff, except as plaintiff chose to step into the one Cravens made for an undisclosed principal. In Larson v. O'Hara, supra, the court said: "The return of the money to the Odett & Ball Land Company did not relieve her

(defendant) from liability to the plaintiff. Although they were without authority to execute the contract of sale, they represented her in the negotiations with Larson, and until the money was returned to Larson it was still in the hands of her agents. See Thomas v. Moody, 57 Cal. 215; Bogart v. Crosby, 80 Cal. 195, 22 Pac. 84." Soon after the sale was effected plaintiff was informed that defendant was the purchaser. He must have known that a contract binding the purchaser had been made by Cravens in his behalf, for he, plaintiff, had made none. The authorities go to the extent that a principal may ratify an unauthorized act of his agent "by voluntarily assuming the risk without inquiry, [and] * * * upon such knowledge as he possesses, without caring for more." Ehrmanntraut v. Robinson, 52 Minn. 333, 54 N. W. 188. It is not necessary to apply that rule here, for in September, 1915, plaintiff knew definitely that Cravens had assumed the authority to collect the full payment from defendant, and that Cravens had no right to represent defendant, and, this notwithstanding, he affirmed the Cravens' contract and now seeks to have it specifically enforced. As between the parties hereto the loss from Cravens' misappropriation of the money paid on this contract must fall upon plaintiff who constituted Cravens his agent to negotiate the deal.

It seems defendant went into possession of the land long before the title was perfected. The court directed the note and mortgage, which defendant was to deliver, to draw interest from the time the title was made good. This was improper. The contract provides that possession was to be given immediately and that unpaid balances should bear interest from the date possession is given.

The order denying a new trial is affirmed, but without prejudice to the right of plaintiff to apply to the court below for a modification in respect to the date from which interest on the note and mortgage shall run.