### ANNA J. BRINGGOLD AND OTHERS v. WALTER A. BRINGGOLD AND OTHERS.[1]

No. 26,202.

January 20, 1928.

**Contract by unauthorized agent may be ratified by principal for whom it was made.**

1. Where a contract has been made on behalf of designated principals by persons purporting to act, but not at the time having authority to act, for them, the agency thus pretended may be confirmed and created by ratification, and, nothing else appearing, the bringing of an action upon the contract may constitute such ratification.

**Ratification after performance adopts whatever has been properly done within scope of agency.**

2. Where the ratification of such a contract takes place after it has been performed, the parties so ratifying adopt whatever has been done under the contract in good faith and within the scope of the agency.

Agency, 2 C. J. p. 470 n. 71; p. 482 n. 42; p. 513 n. 97.

---

See 21 R. C. L. 928; 4 R. C. L. Supp. 1439.

---

Plaintiffs appealed from an order of the district court for Goodhue county, Albert Johnson, J. denying their motion for a new trial. Reversed in part.

*Selover & Mansfield,* for appellants.

*A. J. Rockne* and *D. C. Sheldon,* for respondents.

[1]Reported in 217 N. W. 362, 365.

STONE, J.

After a trial without a jury and a decision for defendants, plaintiffs appeal from an order denying their motion for a new trial.

Though suing on contract, plaintiffs are claiming a share in the estate of James Thompson Bringgold, late of New York state. He died there intestate in 1919. His heirs, numerous enough, at first failed to appear, and the estate escheated temporarily to New York. There was real estate of the appraised value of $14,000 and $131,065.92 in personal property. When the heirs did show up, such proceedings were had in the surrogate court of Montgomery county, New York, that the personal property, less $1,500 allowed the state for expenses, was assigned to Andrew Bringgold, an uncle and next of kin of the deceased, and the real estate, one-fourth to Andrew Bringgold and three-fourths to 27 first and second cousins of the deceased (among them the parties to this action) as tenants in common. That distribution was apparent rather than real, for pending the proceedings another and antagonistic group of heirs had appeared from Wisconsin. By a compromise they were to get, and did get, half of the net estate. This contest involves the moiety that remained in the uncle and cousins of the deceased after settling with the Wisconsin claimants.

April 9, 1921, the uncle, Andrew, and twelve of the cousins retained defendant Sheldon, a member of the Goodhue county bar residing at Pine Island, to "investigate and prosecute" their claim of heirship "according to their respective rights." Plaintiffs were not parties to this contract, exhibit 1 of the record.

The first and second cousins to whom we are referring are the children and grandchildren of Jacob and Abraham Bringgold and their sister, Susan Bringgold Walter, who are respectively two deceased uncles and a deceased aunt of James Thompson Bringgold, a part of whose estate is in controversy. Walter Bringgold, a son of Abraham Bringgold, is one of the cousins who signed exhibit 1. Within a month thereafter and on May 7, 1921, he, signing individually and as "agent of all heirs & next of kin of James Thompson Bringgold, deceased," entered into a written contract, exhibit A of the record, with his uncle Andrew. It recited the death of the New

York relative and the desire of Andrew to conduct an investigation and proceed in the courts of New York "to establish his right to inherit the said real and personal property" and his desire that Walter conduct and finance such investigation. Walter, "individually and as agent aforesaid," accordingly agreed to conduct and finance the investigation. In consideration of that, the parties contracted finally that if the property were recovered it should be divided, one-fourth to the uncle, Andrew, and one-fourth to each of the three groups of cousins, the heirs respectively of Jacob, Abraham and Susan.

Two years elapsed and another contract was signed on May 1, 1923, exhibit B of the record. Meantime the claim of the Wisconsin heirs had been formally asserted and the compromise with them agreed upon. It was made by the uncle, Andrew, and Walter A., Christopher and Jacob A. Bringgold, and Edward Walter (four of the cousins), for themselves "and as agents for all others of the heirs-at-law and next of kin" of James Thompson Bringgold. It recites the making of exhibit A two years before and by reference incorporates that contract as a part of itself. It recites next the intervention of the Wisconsin heirs and the pending compromise whereby they were to get half and Andrew Bringgold half of the estate, and closes as follows:

"Now Therefore in consideration of the premises and to effect said compromise said Andrew Bringgold, party of the first part, agrees to and with the said parties of the second part to receive and accept from them the sum of ten thousand dollars in full settlement and satisfaction of his share in said estate, payable out of such funds when received and that the balance thereof be employed in paying expenses of said proceeding including attorney's fees and the balance divided, one third to the heirs of Jacob Bringgold, one third to the heirs of Abraham Bringgold and one third to the heirs of Susan Bringgold Walter."

Pursuant to exhibit B, $51,107.27 was paid to defendant Sheldon for distribution. That was one-half of the estate after the substantial inroads of counsel fees and other expenses in New York. After

deducting his own fees and other stated expenses and paying Andrew the $10,000 reserved to him by exhibit B, Mr. Sheldon had remaining, net and for distribution, $30,224.24. He paid that sum, one-third to his clients who were the heirs of Abraham Bringgold, one-third to his clients who were the heirs of Susan Bringgold Walter, and one-third to his clients Jacob A. and Charles R. Bringgold, *two* of the heirs of Jacob Bringgold, who received and divided equally between them $10,074.74, or the entire share due the heirs of Jacob Bringgold under exhibit B. That is the main thing of which plaintiffs complain. They also are heirs of Jacob Bringgold, his children and grandchildren. They did not sign and are not parties to any of the three contracts, but claim as beneficiaries of them—that exhibits A and B were made in part for their benefit. Their prayer for relief is in substance that they recover from all the defendants, rather than from only the two who are also heirs of Jacob, their share of the moneys disbursed by Mr. Sheldon.

Pending the distribution of the personal property the real estate of the New York Bringgold was also disposed of. In order to facilitate matters, defendant Walter A. Bringgold took it over for $14,000, paying that sum in cash. That money was distributed to the ascertained heirs, and each quitclaimed. Walter soon disposed of the property at a profit of $5,400. Plaintiffs now want a share of Walter Bringgold's profit on the real estate and also question other disbursements, including compensation to, Walter Bringgold for his special services and the fee of defendant Sheldon.

Neither under the laws of New York nor the decree of distribution did the plaintiffs or any other cousins of the deceased have any right in his personal property. But exhibit B provides that one share was to go to the heirs of Jacob Bringgold, of whom plaintiffs are four. Decision went against plaintiffs below on the authority of Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 A. S. R. 618, wherein it was held that: "A stranger to a contract between others, in which one of the parties promises to do something for the benefit of such stranger, there being nothing but the promise, no consideration from such stranger, and no duty or

obligation to him on the part of the promisee, cannot recover upon it."

1. The arguments for and against a decision upon the doctrine of Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 A. S. R. 618 (including those which attack its doctrine as unsound), need not be met for the present, for in this case the plaintiffs are not strangers to the controlling contracts. The contracts, exhibits A and B, are not merely for the benefit of plaintiffs as strangers but in their behalf as principals. Exhibit A was signed by Walter Bringgold as "agent of all heirs & next of kin" of the deceased. In that connection also Walter, "individually and as agent aforesaid," agreed to conduct and finance the investigation provided for by the contract. Again, when exhibit B was made, it was signed by Walter and three others, not only for themselves, but also "as agents for all others of the heirs-at-law and next of kin" of the deceased. That under New York law plaintiffs were not technically heirs of the deceased is immaterial, for both contracts identify the persons who were intended to be included, and plaintiffs are expressly so included because they are descendants of Jacob Bringgold. The contracts were made, then, on behalf of plaintiffs by persons purporting to act, but not having at the time authority to act, as their agents.

Exhibit B, the final contract, has been fully performed. Plaintiffs claim to have ratified the acts of their agents thereunder. Nothing else appearing, an action on the contract may be a sufficient ratification. Jones v. Blair, 137 Minn. 306, 163 N. W. 523. But we do not now hold that there was ratification. That issue was not distinctly presented below, and there is no finding thereon. All we do hold, and it is enough to require a partial new trial of the issues, is that if there was no repudiation of the contract by plaintiffs and instead they ratified it, they are entitled to recover. And, nothing else appearing, a demand for an accounting, particularly when followed by the appropriate action, would amount to a ratification. "The idea that one who was not actually a party to a contract—though he was one nominally,—may actually become one by some subsequent act of his own without new consideration or the assent

of the other party  *  *  *  would  *  *  *  seem very strange if it had not become so familiar." 1 Mechem, Agency (2 ed.) § 345. That agency may be created by ratification is elementary. Sheffield v. Ladue, 16 Minn. 346 (388), 10 Am. R. 145; Stearns v. Johnson, 19 Minn. 470 (540) ; Goss v. Stevens, 32 Minn. 472, 21 N. W. 549; Hunter v. Cobe, 84 Minn. 187, 87 N. W. 612; Jones v. Blair, 137 Minn. 306, 163 N. W. 523.

The proposition is aptly illustrated by Starks v. Sikes, 8 Gray, 609, 69 Am. D. 270, where two of three tenants in common, without authority from a third, negotiated a lease which required the lessee to insure the premises. Loss occurring, the plaintiff, the cotenant who had not joined in the lease but for whom the other two pretended to act, was held entitled to his aliquot part of the insurance money. Chief Justice Shaw said that the two cotenants, having undertaken to act as the agents of the plaintiff, were estopped to deny it. He goes on to say [at p. 612]:

"It might have been competent for the plaintiff to repudiate the assumed agency of his cotenants, and claim possession of his part against the tenant. But it was also competent for him to affirm and adopt the doings of such assumed agents; and then, by a well known maxim of law, the subsequent ratification gives to the agency the force and effect of an original express authority. In the present case it appears, that the plaintiff has affirmed and ratified the doings of his assumed agents, and now claims one of the benefits of it." See also Hormann v. Sherin, 6 S. D. 82, 60 N. W. 145.

In Roller v. Spilmore, 13 Wis. 29, 33, the "settled principle of equity" was enforced "that where a person undertakes to act as an agent for another, he cannot be permitted to deal in the matter of that agency upon his own account and for his own benefit. And if he takes a conveyance in his own name, of an estate which he undertakes to obtain for another, he will in equity be considered as holding it in trust for his principal."

In Lyell v. Kennedy, 14 L. R., (A. C.) 437, it was held by the House of Lords that one who collected rents, avowedly as the agent of unascertained heirs, was liable accordingly to the heirs when

they were ascertained and had ratified the acts of their volunteer agent. So in this case, in the absence of repudiation of the contract made for plaintiffs but without their authority, they may recover if they show ratification at a time and under circumstances when they had not lost the right to ratify. With respect to that issue there must be a new trial.

2. The claim based upon the sale of the real estate to Walter Bringgold and the profit resulting to him is without merit. That was an open deal openly arrived at. Plaintiffs received their share of the benefit without protest. They cannot ratify the contract without adopting what has been done in good faith and within the scope of the assumed agency. There is an entire absence of proof that the sale of real estate to Walter Bringgold was not in good faith and for the best interests of all concerned. In the same category are the other disbursements of which plaintiffs complain. The result will be the same whether they are considered as principals for whom the contract was made by agents or as mere beneficiaries. A repudiation of the contract by plaintiffs or any of them will have the same effect on the ones repudiating whether they be considered principals, for whom the contract was attempted to be made by an unauthorized agent, or merely as beneficiaries and not parties. All of the disbursements of which they complain were made in performance of the contract, and there is no showing of bad faith or violation of duty with respect to any of the items of which complaint is made. This comment includes both the disbursements to the individual heirs and those to defendant Sheldon in compensation for his professional services.

As the case now stands, there may be liability in favor of plaintiffs and against defendants Jacob A. and Charles R. Bringgold, two of the heirs of Jacob Bringgold, who have received and divided between them the entire share due under the contract to all the heirs of Jacob Bringgold, including the four plaintiffs. Defendants Jacob A. and Charles R. Bringgold are at least the only defendants primarily liable to plaintiffs if in the end liability is established. Because additional light may be thrown upon the issue by further evidence and argument, and particularly by an

initial decision of the question by the trial court, we do not now hold that there may not be a secondary liability on the part of other of the defendants who participated in what may be an over-payment to two of their number. If there was a plan to deprive plaintiffs of what was due them under the contract, those who participated in the plan and its execution would at least be liable secondarily, the primary liability, as already suggested, being on the two who got all the money.

Agreeably to the theory of the case developed in the foregoing, the order appealed from must be reversed and a new trial ordered of the issue of plaintiffs' repudiation or ratification of the con-trolling contract, and the issue, if liability is established, whether that liability goes beyond the defendants Jacob A. and Charles R. Bringgold.

So ordered.

## UPON PETITION FOR REARGUMENT.

On February 17, 1928, the following opinion was filed:.

PER CURIAM.

The petition of appellants for a rehearing is denied, but with this qualification. The opinion was written upon the assumption that plaintiffs and all the other heirs of Jacob Bringgold, deceased, had been paid their share of the proceeds of the sale of the real estate of James Thompson Bringgold, deceased. It is now claimed in the petition for rehearing that plaintiffs, or some of them, have not been paid their share of the proceeds of the real estate. With-out now attempting to determine what the fact may be, we simply wish it understood that the decision must be taken not only as without prejudice to the rights of plaintiffs to their share of the money realized on the sale of the real estate, but also as proceeding upon the assumption, whether payment of such moneys has been made to the persons entitled to it or not, that such right has not been questioned and is not now in question.