ANNA J. BRINGGOLD AND OTHERS v. WALTER A.
BRINGGOLD AND OTHERS.[1]

January 8, 1932.

No. 28,526.

*A. J. Rockne* and *D. C. Sheldon,* for appellants.
*J. A. Mansfield,* for respondents.

LORING, J.

This is the second appearance of this case in this court. The opinion on the former appeal appears in 173 Minn. 394, 217 N. W. 362, 365. The history of the facts giving rise to the litigation sufficiently appears in that opinion. The case went back to the trial court upon the sole issue as to whether the plaintiffs repudiated or ratified the contract to which they were not parties and by which the heirs of Jacob Bringgold were to share in Andrew Bringgold's inheritance from the deceased James Thompson Bringgold of New York.

The defendants Jacob A. and Charles R. are sons of the Jacob Bringgold mentioned in the contracts referred to in the former opinion.

The plaintiffs are children or children of deceased children of Jacob. There are other children or grandchildren of Jacob who are

[1]Reported in 240 N. W. 120.

not parties. The defendants other than Jacob A. and Charles R. are not descendants of Jacob and have received none of the money claimed by plaintiffs, except that defendant D. C. Sheldon was attorney for the defendants and others in the recovery of Andrew's share of the estate. As to him the trial court dismissed the case upon the merits, and the references hereafter made to the defendants will not include him. Plaintiffs frankly admit that there is no evidence to support the trial court's finding of secondary liability as to the defendants who are not descendants of Jacob; but, since the appellants assign no error and make no point of this, we do not consider it.

April 6, 1919, James Thompson Bringgold of Amsterdam, New York, died intestate without widow, children, or parents surviving him. His estate, amounting in value to about $130,000 in personal property and $14,000 in real estate, temporarily escheated to the state of New York.

April 9, 1921, thirteen of the Bringgold family, who lived in Minnesota and other northwestern states, engaged D. C. Sheldon, a lawyer of Pine Island, Minnesota, to investigate and prosecute their claims to share in the estate of the deceased New Yorker. Andrew was a brother of John Bringgold, deceased, the father of the deceased James Thompson Bringgold; and the others who engaged Mr. Sheldon's services were descendants of a deceased sister or of deceased brothers of John. None of these plaintiffs signed the contract with Sheldon, and no one assumed to sign for them or in their behalf. It was provided that in case of failure to prove heirship the expenses should be borne, one-third by "those who are descendants of Susan Walters," the sister of John, and one-third "by those who are descendants of Abraham Bringgold," a brother of John, and the same provision in regard to "those who were descendants" of Jacob, another brother of John. If they were successful, "each branch," including Andrew, was to stand one-fourth of the expense. The estate was also being claimed by certain Bringgolds of Green Bay, Wisconsin, who claimed to be descendants of John by a second marriage. The validity of this second marriage was the chief subject of investigation.

May 7, 1921, a written contract was made between Andrew Bringgold, the surviving brother of John, and Walter Bringgold, assumed by us to be the same person as the defendant Walter A. Bringgold. By that contract, Walter, signing for himself individually and "as agent of all heirs & next of kin of James Thompson Bringgold, deceased," agreed to advance such money as might be necessary for the investigation to establish Andrew's right to inherit. Andrew agreed that if he recovered any part of the money and property which had escheated to the state of New York he would pay and divide the same "one-fourth * * * to the heirs of Jacob Bringgold," etc.

May 1, 1923, the proceedings in New York had evidently reached a stage where a compromise with the Wisconsin claimants was either effected or was about to be concluded, for on that day Andrew entered into a contract with Walter, Christopher, Jacob A. and Edward Walters, whereby Andrew, modifying the agreement of May 7, 1921, agreed to accept $10,000 clear of expenses as his share of the result of the compromise. The remainder of the inheritance which he received, after giving one-half to the Wisconsin Bringgolds, was to be applied to the payment of expenses, including attorney's fees, then "one-third to the heirs of Jacob Bringgold," etc. Evidently Christopher, Jacob A. and Edward Walters had contributed funds to assist Walter in the investigation. It will be noted that they were members of the three "branches" of the family who had previously contracted with Andrew.

As a result of the compromise, after the disbursement of incurred expenses, $10,074.74 was paid to Charles R. Bringgold and Jacob A. Bringgold as sons of the deceased Jacob. This was the total one-third which by contract was to go to the heirs of Jacob.

The plaintiffs, who did not contribute anything to the prosecution of the investigation and subsequent proceedings, claim that by ratification they have adopted the terms of the contracts of May 7, 1921, and May 1, 1923, and that they are entitled to share in the money received by Jacob A. and Charles R.

The trial court found that plaintiffs had ratified by demanding an accounting after the distribution and by bringing this action.

The defendants insist that such demand and action are not sufficient to give the plaintiffs the benefit of the contracts and that by standing by and awaiting results without contributing to the enterprise they have precluded themselves from taking advantage of the contracts. Defendants also claim that the complaint in this action was in effect a repudiation of the contracts now sought to be enforced. The trial court has found that the plaintiffs had no knowledge of the contracts until the fall of 1923, when it finds that they at once demanded an accounting and followed the demand by commencing this action in July, 1925. The court held that the demand and action constituted a ratification. No other issues have been raised, and the sole question before us is whether the court's finding of ratification is sustained by the evidence.

Some confusion may arise out of the fact that the parties hereto were, with many others, heirs to the real estate but not to the personal property. Much of the correspondence relates to the real estate. It must be borne in mind that up to the time that it was discovered that Andrew alone would inherit the personal property the efforts of all were directed toward establishing heirship. The record is not clear as to when, if at all, Andrew's sole right to the personal property under the law of New York was disclosed to plaintiffs. It might well be that plaintiffs were well aware of the efforts being made to establish their heirship and were not aware of the contract with Andrew. The court found that plaintiffs, until the fall of 1923, were not aware of the provisions of the contract by which Andrew agreed to divide with them a part of his inheritance. Upon the whole record, we consider that finding justified. The establishment of plaintiffs' heirship and their right to share in Andrew's inheritance of the personal property were quite different matters.

Much fault is found with plaintiffs for not contributing to the prosecution of the New York proceedings; but, notwithstanding their failure to do so, the contract of May 1, 1923, was made. That contract made the contract of May 7, 1921, "a part hereof," and again and notwithstanding plaintiffs' failure to contribute, pro-

vided that one-third of the net recovery after deducting Andrew's $10,000 should go "to the heirs of Jacob Bringgold." This was at the conclusion of the controversy after practically all expenses had been incurred and all hazards encountered. Plaintiffs' failure to contribute was then a known fact and apparently considered of no importance. They were nevertheless included within the benefits provided. In the face of this contract we cannot see that plaintiffs' previous failure to contribute precludes them from claiming a ratification or adoption of the contract made for their benefit.

When in the fall of 1923 plaintiffs ascertained that these contracts had been made, the court finds that they acted promptly in demanding an accounting. There was then nothing to contribute to—the result had been obtained, the expenses repaid, and the net proceeds distributed. It is difficult to see what more plaintiffs could have done to ratify or adopt the contracts than they did do after they discovered their existence.

Respondents claim that the bringing of the suit was a repudiation, not a ratification of the contract. We do not so construe the complaint. It sought relief under the contract and sought to have its terms enforced and an accounting thereunder. It challenged certain actions and certain expenditures, but this plaintiffs had a right to do without repudiating the contract. The complaint was before this court on the first appeal, and the question of ratification was held to be still an open one.

The proper amount of recovery by each plaintiff is not questioned here.

The order appealed from is affirmed.