R. L. STILLMAN *vs.* MICHAEL FITZGERALD and another.

### July 8, 1887.

**Principal and Agent—Real-Estate Broker—Sale.**—A firm of real-estate brokers wrote to the defendant saying, "We have a customer [meaning the plaintiff] who would buy your lot if offered at a fair price," and asking him to state the best price and the terms for which he would sell, and pay their commission, which was stated. The defendant answered by letter, stating price, and, in part only, the terms for which he would sell, and that he would pay their commission. *Held*, that the brokers were not thereby constituted the defendant's agents, with power to bind him by a contract of sale.

Same—Ratification.—Subsequent correspondence considered as not constituting a ratification of such a contract.

Appeal by defendant Fitzgerald from an order of the district court for Hennepin county, *Young,* J., presiding, refusing a new trial.

*C. D. O'Brien,* for appellant.

*Stillman & Briggs,* for respondent.

DICKINSON, J. This is an action for a specific performance of a contract, alleged to have been made with the defendant, for the purchase of land owned by him. The contract was made, on the part of the defendant, by Plummer & Son, a firm of real-estate brokers. The defendant denies the authority of Plummer & Son to make the contract. Upon this issue the court found in favor of the plaintiff. A review of the evidence upon this point has led us to the conclusion that it does not justify the finding of the court. The agency, if there was any, arose from the written correspondence between Plummer & Son and the defendant, which is presented in the record; and we assert our conclusions, in opposition to that of the learned judge who tried the cause, more freely than we should if the question were deemed to depend upon the oral testimony of witnesses.

The plaintiff, with a view of purchasing the property, inquired of Plummer & Son if they had the property for sale, and disclosed his desire to purchase. The brokers then wrote to the defendant, who resided in a distant part of the state, as follows: "We have a customer who would like to buy your lot, [describing the land in controversy,] if offered at a fair price. Will you give the best figures at which you would sell, and pay our commission, which is the usual 5 per cent. on first $1,000, 2½ on remainder? Also the terms of payment you require."

To this the defendant replied on May 30th as follows, by letter to Plummer & Son: "I will sell the lot for $2,300 on time, not less than one-fourth down, and 7 per cent. interest on balance; or $2,000 cash. I will pay your commission. This you must answer, if accepted, so I can get the decision here by next Wednesday, as I have an offer that I shall take if I do not hear from you by then."

Upon the receipt of this letter, Plummer & Son, on behalf of the

defendant, entered into the contract in writing with the plaintiff upon which this action is brought; the plaintiff paying to Plummer & Son $150 as earnest-money. By the terms of this instrument it was set forth that Plummer & Son, as authorized agents of the defendant, had sold to the plaintiff this land for the sum of $2,300, of which $575 was to be paid in cash upon the delivery of the deed within 10 days, and the balance in three years, with interest at the rate of 7 per cent. per annum; the same to be secured by mortgage upon the property. It was further expressed that, if the defendant should fail to convey a full and perfect title within 10 days, the purchaser should be released, and the earnest-money refunded, and that, if the purchaser should refuse to complete the purchase, the earnest-money should be forfeited "to J. C. Plummer & Son."

The assumed agents then (June 2d) notified the defendant by letter that they "had sold" the lot, but did not state the terms of the agreed sale, except that the purchaser would pay cash if she could raise the amount; if not, that she would take the property on the time proposition, and would decide the next day which way she wanted it. It was also stated that they (P. & Son) had $150 in forfeit, and had given a 10-days contract, so as to allow time for procuring abstract, and for examination of title. They requested that the abstract of title be sent to them.

The following day, June 3rd, they wrote again, urging the sending of an abstract, and saying, "Your proposition to sell on time, ¼ cash, is the way they decide to take it." Two days after this, June 5th, they wrote again saying, "We have made a *bona fide* sale of your lot, according to price and terms given us in yours of the 30th, and as your agents have given the buyer a contract for conveyance, which is regularly acknowledged and recorded. Your delay in sending abstract, or writing to us, is strange, to say the least."

June 7th the defendant replied as follows: "Your three letters are all duly to hand to-day: I have no telegram whatever. I see by your last letter that it is the time sale that is accepted, but you do not state the time. I do not care to give over two years' time; interest payable semi-annually. As to the abstract, you can get the old one from Mr. Gowen by paying him $10 which I owe him. * * *

You have deed made out, and mail me, and I will execute that here, and come down to Minneapolis next week, and get the mortgage and money, and fix the matter up. I think that will save delay. I should answered sooner if I had known, but as I live out in the country I do not come to town often."

Upon receipt of this letter by Plummer & Son, the plaintiff executed and left with them (so that the defendant might elect which to accept) two notes, with mortgages properly securing each of them; one payable in three years, according to the terms of the written contract; and the other payable in two years, with interest semi-annually.

On the 13th day of June the defendant conveyed the property to another party.

It seems to us apparent that at the time of the execution of the written contract, May 31st, the defendant had not invested Plummer & Son with authority, as his agents, to contract for the sale of the land. The letter of the brokers to the land-owner does not express a desire or consent to assume such a relation towards him. Its plainer import is that they are making this application in behalf of the proposed purchaser, with reference to whom they say, "*We have a customer who would like to buy,*" etc.; and further asking the best figures and terms of payment for which "*you* would sell." There is little, if anything, in the letter suggesting a wish or a willingness to assume the relation of agents for the sale of the land, as the representatives of the defendant, which would impose upon them obligations of fidelity to the interests of the latter which would be naturally opposed to a rightful purpose and effort to secure the property for their customer at the "best figures" possible. It further appears from the oral evidence that they considered at this time that they were making these inquiries in behalf of the plaintiff. They could not rightfully sustain the relation of agents for both parties to the negotiation. If this letter was intended by the writers as a proposal to become the defendant's agents, the proposal was not only covert, but, as it seems to us, studiously disguised. The proposal with respect to paying the commission of the brokers was not at all inconsistent with their occupying the relation of agents for the purchaser. Nor does the answer of the

defendant add any support to the assumption of agency. It does not go beyond replying to the inquiries of the brokers as to the terms upon which *he* will sell; and even as to that his answer is not fully explicit. He indicates a willingness to give credit for a part of the price, but does not state the period for which he will consent to defer the payment.

There had been no other correspondence when the contract was made; but we should consider, also, the subsequent correspondence in its bearing as evidence upon the question whether at that time (May 31st) the defendant had intended to and had constituted the brokers his agents. The last letter of the defendant, June 7th, is the first communication from him after he was informed that Plummer & Son had assumed to act as his agents. The fact that in this letter he does not distinctly deny their authority to act for him is not, we think, sufficient to prove that he had intended by his previous letter to create them his agents. As yet he was not informed fully as to the nature of the contract which they had made, and, so far as he knew the facts, it would seem that he deemed it probable that he would not desire to repudiate the contract, although it had been made without authority. Referring, however, to the fact that they had not stated what period of credit had been given, he states his unwillingness to allow over two years, and that interest should be paid semi-annually. This indication of his disposition to exercise a present control as to the terms of sale is inconsistent with the theory that he had constituted these brokers his agents, with authority to bind him by any contract which they may have made, and that by this letter he tacitly admitted the assumed authority of Plummer & Son.

Such are the principal considerations which have led us to the conclusion that the evidence is insufficient to show that Plummer & Son had been authorized to contract for the defendant, when they assumed to do so by the agreement upon which this action was brought.

It only remains briefly to consider whether the defendant is chargeable as having ratified the contract. The only evidence of ratification is such as may be found in the letter last referred to. It is obvious that the defendant did not by that letter affirm and adopt as

his own the contract sued upon, which provided for a credit of three years; for he declares his unwillingness to allow more than two years. The same may be said as to the terms for the payment of interest. This was not a ratification of the written contract, and no other contract was ever made between the parties.

In the view which we have taken of the case, it is unnecessary to consider some other questions presented upon the argument.

The order refusing a new trial must be reversed.