## HANS LARSON v. MARY J. O'HARA.[1]

May 11, 1906.

Nos. 14,697—(74).

**Real-Estate Broker.**

A real-estate broker who is employed to find a purchaser for land,, or with whom land is listed for sale at a specified price, has no implied authority to execute a contract of sale.

**Earnest Money.**

Where a contract to convey land is unenforceable, and the owner refuses to convey, earnest money paid on such contract may be recovered.

**Evidence.**

The evidence in this case examined, and *held* to sustain the verdict.

Appeal by defendant from an order of the district court for Polk county, Watts, J., denying a motion for judgment notwithstanding the verdict or for a new trial, after a trial and verdict in favor of plaintiff for $150. Affirmed.

*Ray G. Farrington,* for appellant.

*H. W. Stark* and *W. E. Rowe,* for respondent.

ELLIOTT, J.

This action was brought to compel specific performance of a contract to convey real estate and to recover damages alleged to have been caused by the defendant's failure and refusal to carry out and perform her agreement to convey. As the case was tried, the action was treated by all parties as one for damages. It appears to have been tried by the court and a jury without objection. At the close of the evidence the court directed a verdict for the plaintiff, and the defendant appeals from an order denying her motion for a judgment in her favor notwithstanding the verdict, or for a new trial.

The first and second assignments of error cannot be considered. No exceptions were taken to the rulings of the court, and no errors were assigned in the motion for a new trial. By a liberal construction

[1] Reported in 107 N. W. 821.

of the other assignment we are enabled to determine whether the evidence is sufficient to support the verdict.

Prior to March 7, 1905, the appellant, Mary J. O'Hara, was the owner of eighty acres of land situated near Crookston. The Odett & Ball Land Company was a partnership engaged in business as real-estate brokers. On November 26, 1904, Mrs. O'Hara wrote to these parties, stating that she would accept $3,800 net cash for the land in question, provided they could sell it by January 1, 1905. On January 25, 1905, evidently in reply to an offer, she again wrote to them that she would accept $3,675 for the land and allow them a commission of $80 for making the sale. On January 30, 1905, she wrote again, suggesting or agreeing to some modifications in the terms of payment. On January 31 the brokers telegraphed her:

> Letter received. Party accepts your offer. All cash. See letter.

On the same day they wrote Mrs. O'Hara a letter and inclosed a check for $150 "as earnest money for the purchase of the land." In this letter they stated that

> The party to whom we are selling this land was in today and we showed him your letter and he accepted your proposition, but will pay all cash as soon as the contract is completed.

Directions were then given Mrs. O'Hara with reference to the preparation of the abstract and other papers connected with the proposed transfer. On February 2d the Odett & Ball Land Company, assuming to act for Mrs. O'Hara, signed a written contract of sale of the land to the plaintiff, Larson, which contained the terms and conditions of the sale. The action is based upon this contract.

Mrs. O'Hara never directed the execution of the contract, and never saw it until it was produced at the trial. She received the letter of January 31 inclosing the check, and on February 2 replied that she would furnish an abstract and would send the deed as directed. She then, in the same letter, informs them that she had purchased the land from P. J. McGuire, and at the time of the purchase had agreed to reconvey the land to McGuire at any time within three years upon the

performance of certain conditions and the payment of a debt due from McGuire to her. She stated that the three years had expired, and that McGuire had not complied with the conditions and that his rights under the contract had been forfeited, and that, if necessary, she would go into court and have the contract annulled. She expressly informed the land company that she wished the purchaser to "perfectly understand" the matter, and it is evident that she intended that the sale of the land must be subject to whatever rights McGuire still had. On February 10 she wrote that McGuire had claimed the right to perform his contract, and that she therefore returned the $150. Soon after the money was returned the plaintiff commenced this action.

Upon this evidence we are satisfied that Mrs. O'Hara never authorized the brokers to execute a contract for the sale of the land. Their authority was limited to finding a purchaser who was willing to buy on the terms fixed by the owner. Stillman v. Fitzgerald, 37 Minn. 186, 33 N. W. 564. As said by Vice Chancellor Pitney in Keim v. Lindley (N. J. Eq.) 30 Atl. 1063, 1073, "the mere employment of an ordinary real-estate broker to effect a sale of a parcel of land, even though the price and terms be prescribed, does not amount to giving present authority to such broker to conclude a binding contract for the same. Moreover, such authority is not usually to be inferred from the use by the principal and broker in that connection of the terms for sale or to sell and the like. Those words in that connection usually mean no more than to negotiate a sale by finding a purchaser upon satisfactory terms." There is nothing in the correspondence from which it may properly be inferred that Mrs. O'Hara intended to confer unusual authority upon the brokers. Her letter of February 2 contained full information with reference to the actual condition of the title, and directed them to convey this information to the prospective purchaser. But the contract had been executed before this letter was received.

The authorities with practical unanimity hold that an employment to find a purchaser for certain land on prescribed terms does not authorize the broker to execute a contract of sale. Hamer v. Sharp, L. R. 19 Eq. 108; Prior v. Moore, 3 L. T. R. 624; Chadburn v. Moore, 61 L. J. Ch. 674; Wilde v. Watson, 1 L. R. Ir. 402; McCullough v. Hitchcock, 71 Conn. 401, 42 Atl. 81; Stewart v. Pickering, 73 Iowa,

652, 35 N. W. 690; Furst v. Tweed, 93 Iowa, 300, 61 N. W. 857; Holmes v. Redhead, 104 Iowa, 399, 73 N. W. 878; Balkema v. Searle, 116 Iowa, 374, 89 N. W. 1087; Campbell v. Galloway, 148 Ind. 440, 47 N. E. 818; Dickinson v. Updike (N. J. Eq.) 49 Atl. 712; Lindley v. Keim, 54 N. J. Eq. 418, 34 Atl. 1073.

By the very decided weight of authority the rule is the same where the broker is authorized "to sell" the land. In Halsey v. Monteiro, 92 Va. 581, 24 S. E. 258, the court, practically quoting from McCullough v. Hitchcock, supra, said: "A real-estate broker or agent is defined to be one who negotiates the sale of real property. His business generally is only to find a purchaser who is willing to buy the land upon the terms fixed by the owner. He has no authority to bind the principal by signing a contract of sale. A sale of real estate involves the adjustment of many matters besides fixing the price. The delivery of the possession has to be settled; generally the title to be examined, and the conveyance with its covenants to be agreed upon and executed by the owner, all of which require conference and time for their completion. They are for the determination of the owner, and do not pertain to the duties, and are not within the authority of a real-estate agent. For obvious reasons, therefore, the law wisely withholds from him any implied authority to sign a contract of sale in behalf of his principal." As supporting this general proposition, see Brandrup v. Britten, 11 N. D. 376, 92 N. W. 453; Ballou v. Bergvendsen, 9 N. D. 285, 83 N. W. 10; Carstens v. McReavy, 1 Wash. 359, 25 Pac. 471; Jones v. Holladay, 2 App. D. C. 279; Duffy v. Hobson, 40 Cal. 240, 244, 6 Am. 617; Armstrong v. Lowe, 76 Cal. 616, 18 Pac. 758; Morris v. Ruddy, 20 N. J. Eq. 236; Everman v. Herndon, 71 Miss. 823, 15 South. 135; Sullivan v. Leer (Colo.) 29 Pac. 817; Graves v. Horton, 38 Minn. 66, 35 N. W. 568; Stillman v. Fitzgerald, supra; Warvelle, Vendors (2d Ed.) § 206; Mechem, Ag. § 966.

The contract was unenforceable and, Mrs. O'Hara having refused to convey the land, the plaintiff was entitled to recover the amount which he had paid as part of the purchase price. Payne v. Hackney, 84 Minn. 195, 87 N. W. 608. The return of the money to the Odett & Ball Land Company did not relieve her from liability to the plaintiff. Although they were without authority to execute the contract of sale, they represented her in the negotiations with Larson, and un-

til the money was returned to Larson it was still in the hands of her agents. See Thomas v. Moody, 57 Cal. 215; Bogart v. Crosby, 80 Cal. 195, 22 Pac. 84. She admits that she knew the name of the party with whom the agents were dealing.

Order affirmed.