(No. 15650.—Decree affirmed.)
MAX J. STEIN, Appellant, *vs.* WILLIAM AYER McKINNEY
*et al.* Appellees.

*Opinion filed June 17, 1924—Rehearing denied October 9, 1924.*

1. SPECIFIC PERFORMANCE—*what writing is sufficient to satisfy
Statute of Frauds.* In a contract for the sale of real estate, or in
the written authorization of an agent to make such contract, no
particular form of language is necessary to constitute the memoran-
dum requisite to satisfy the requirements of the Statute of Frauds,
but the complete contract may be gathered from letters, writings
and telegrams between the parties relating to the subject matter
of the contract and so connected with each other that they may
be fairly said to constitute one paper relating to the contract.

2. SAME—*real estate broker has no authority to make contract
of sale.* A real estate agent employed by the owner to find a pur-
chaser for a tract of land, although the terms of sale are fully
prescribed, does not have authority to execute a contract of sale
which will bind the owner.

3. SAME—*where Statute of Frauds is pleaded, contract must be
proved by writing, alone.* Where the Statute of Frauds is pleaded
in a suit for specific performance the contract cannot rest partly
in parol and partly in writing, but the contract in writing, or some
memorandum, must be proved.

4. SAME—*what does not show authority of agent to make con-
tract of sale.* Where an owner has engaged a real estate broker
to sell his property for him, a letter and a telegram from him to
the agent stating the price and terms of sale, and a telegram of
the owner to his wife, in answer to a wire from the agent, direct-
ing her to inform the agent where to find the papers necessary to
complete the transaction, are not sufficient memoranda in writing
to authorize the agent to sign a contract for the owner binding him
to convey a good and merchantable title by general warranty deed,

5. SAME—*what must be shown in writing before contract for sale of real estate can be enforced.* A contract for the sale of real estate cannot be enforced unless the writings contain the names of the vendor and vendee, a description of the property sufficiently definite to identify it, the price, the terms and conditions of sale, and the signature of the party to be charged.

6. SAME—*effect of Statute of Frauds.* The Statute of Frauds does not vitiate an oral contract for the sale of real estate but merely denies the right to compel its performance.

7. SAME—*right to set up Statute of Frauds is not waived by a failure to give it as a reason for refusing to go on with contract.* A party sought to be charged on an oral contract for the sale of real estate is under no obligation to raise the question of want of writing until the other party seeks the aid of a court to enforce the contract, and the fact that the Statute of Frauds is not given as a reason for refusing to go on with the contract is not a waiver of the right to plead the statute when suit is brought.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

McGOORTY, SILBER, ISAACS & WOLEY, for appellant.

HARPER E. OSBORN, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Appellee William Ayer McKinney, the owner of a vacant lot in the village of Winnetka, listed it and other lots for sale with P. W. Bradstreet, a real estate broker. December 22, 1920, McKinney wrote Bradstreet revising prices on the lots listed and fixing the price on the lot in question, which has a frontage of 100 feet, at $40 a front foot, and specifying that the purchaser must agree to build on the lot a house costing not less than $20,000. April 7, 1921, McKinney wrote Bradstreet: "With respect to my lot on Chatfield road, lot 9, block 3, which you have listed at $40 a foot, would say that I wish to change the price for this listing in your records to $45 a foot." May 12, 1921, Bradstreet telegraphed to McKinney, who was then in New York

on business, the following night letter: "Robert Seyfarth, high-grade architect, will buy Chatfield road lot for $4500 cash. Plans building Colonial house to sell around thirty thousand. Seyfarth's houses most attractive and addition to any neighborhood. He is considering other vacant. Must have immediate acceptance or lose sale. My commission two hundred twenty. Advise acceptance to secure such desirable improvement." Two days later McKinney wired from Springfield, Massachusetts, to Bradstreet, the following day letter: "Regret delay in answering your wire. Willing accept offer Robert Heyworth, subject commission two-twenty, conditioned upon stipulation drawn by William B. McIlvaine, of which he knows, limiting lot to one residence for twenty-five years and to agreement to build house to cost not less twenty thousand." On May 17 Bradstreet telegraphed McKinney in New York as follows: "Have learned that Seyfarth plans building for high-grade Jewish party named Stein, who has resided for four years on Chatfield road and Linden. Considering character contemplated improvement and fact my having already confirmed sale to Seyfarth, hope you will not be disappointed but will agree. Can't prevent the inevitable. Only perpetual restrictions, which would make sales impossible, could control re-sale of houses to certain parties. As you and I are both committed on this sale to Seyfarth, don't you feel we should see it through? Have known Stein and like him. Entirely different type than other applicants, and Seyfarth's houses have helped greatly to beautify the North Shore. Where do I get your abstract or guaranty?" Two days later McKinney wired his wife as follows: "Bradstreet wires ultimate buyer Jim Stein, now living Chatfield road, unobjectionable. At his first wire thought could not prevent any purchaser selling any time to anyone, though did not surmise this. What you think, though have really given word? Advise Bradstreet Seyfarth must assume taxes and assessments 1921. If you approve, tell Bradstreet Wingren can

supply guarantee policy from office or you from safe deposit. Get receipt." This telegram was delivered to Bradstreet by the telegraph company at the request of Mrs. McKinney.

Bradstreet went to McKinney's office and procured a guaranty policy and certain tax receipts. He took the policy to the Chicago Title and Trust Company and ordered a continuation. Bradstreet made up in duplicate a contract for sale of the lot in question on a form used by the Chicago Real Estate Board. The contract was not prepared by nor submitted to William B. McIlvaine, McKinney's attorney, but was submitted to and approved by Fred Silber, Stein's attorney. By the contract Stein agreed to buy, and McKinney to sell, the lot for $4500,—$250 with the contract and $4250 within five days after the title had been accepted by the purchaser,—the seller to convey the property by "a good and sufficient general warranty deed conveying to said purchaser a good and merchantable title to said premises." The conveyance was to be subject to unpaid special assessments and general taxes for the year 1921, to building and building line restrictions of record, and "to a building restriction that only one house shall be built on the lot herein described for the next twenty-five years, and to a further restriction that the purchaser, his heirs or assigns, shall build a house costing at least $20,000 on the property herein described." The contract further provided that McKinney should furnish within a reasonable time "a certificate of title issued by the registrar of titles of Cook county, or complete merchantable abstract of title, or merchantable copy brought down to date hereof, or merchantable title guaranty policy made by Chicago Title and Trust Company." Time was made the essence of the contract and of all the conditions contained therein. Both copies of the contract were signed, "Wm. Ayer McKinney, by P. W. Bradstreet, Agent. Max J. Stein."

When McKinney's neighbors learned that the property was to be sold to Stein, they protested so vigorously that

Mrs. McKinney refused to sign the deed. McKinney refused to convey the property, and Stein filed in the circuit court of Cook county against McKinney and his wife his bill for specific performance. By his bill appellant prays for alternate relief: First, that the formal contract executed by Bradstreet on behalf of McKinney be specifically enforced; or, second, that the contract entered into directly between McKinney and Stein, evidenced by the writings signed by McKinney, be enforced. Appellees answered the bill, denying the authority of Bradstreet to execute and deliver the contract and pleading the Statute of Frauds and Perjuries. The master to whom the cause was referred reported, recommending that the bill be dismissed for want of equity. The chancellor overruled exceptions to the report and entered a decree dismissing the bill. This appeal followed.

Appellee Roberta M. McKinney was not a party to the contract and she did not adopt or confirm it by any writing. That she could not be compelled to sign the deed, thereby releasing her inchoate right of dower or any other right she might have, is too clear to require the citation of authorities.

Unless Bradstreet was authorized by a written instrument signed by McKinney to execute and deliver the contract which he did execute and deliver, it cannot be enforced. It is not necessary that there be a formal written authorization, nor is it necessary that the written memorandum be complete in one writing. It is well established that a complete contract binding under the Statute of Frauds may be gathered from letters, writings and telegrams between the parties relating to the subject matter of the contract and so connected with each other that they may be fairly said to constitute one paper relating to the contract. No particular form of language is necessary to constitute the memorandum requisite to satisfy the requirements of the statute. (*Western Metals Co.* v. *Hartman Ingot Metal Co.*

303 Ill. 479.)    All the letters and telegrams from McKinney to Bradstreet must be read together to determine the effect to be given them.    The authorities seem to be of one accord that a real estate agent employed by the owner to find a purchaser for a tract of land, although the terms of sale are fully prescribed, does not have authority to execute a contract of sale which will bind the owner.    (*Thorne* v. *Jung,* 253 Ill. 584; *Jones* v. *Howard,* 234 id. 404; *Stillman* v. *Fitzgerald,* 37 Minn. 186, 33 N. W. 564; *Grant* v. *Ede,* 85 Cal. 418, 24 Pac. 890.)    The sale of real estate involves the adjustment of many matters in addition to fixing the price at which the property is to be sold.    The deed of conveyance may be one with full covenants of seizin and warranty, or it may be a quit-claim, merely.    The vendor may be unwilling to deal with a particular proposed purchaser on any terms, or he may desire to make different terms with different prospects.    A mere authority to sell can hardly confer power upon the agent to determine all these matters for his principal.    In the case at bar Bradstreet has assumed to bind his principal to all of the various covenants of a standard real estate contract.    There is nothing in the writings signed by McKinney which binds him to convey "a good and merchantable title" by a "general warranty deed," yet Bradstreet assumed to bind McKinney to make such a conveyance.    Nor did the telegrams fix the amount and time of the payments, as the formal contract does, nor did they make time of the essence of the contract.    Whether McKinney by word of mouth gave Bradstreet authority to sign the contract which Stein seeks to have enforced, or whether McKinney assented orally to the terms and conditions of this contract, is immaterial.    It is not a question of what may be proved by parol but what the written contract shows.    The Statute of Frauds being pleaded, a contract or memorandum in writing must be proven.    (*Hartenbower* v. *Uden,* 242 Ill. 434; *Kozel* v. *Dearlove,* 144 id. 23.)    We fail to find anywhere in the writings a grant of

authority to Bradstreet to execute a written contract to bind
McKinney to convey a merchantable fee simple title to the
property in question by a general warranty deed.

A contract for the sale of real estate cannot be enforced
unless the writings contain the names of the vendor and
vendee, a description of the property sufficiently definite
to identify it, the price, the terms and conditions of sale,
and the signature of the party to be charged. (*Elwell* v.
*Hicks,* 238 Ill. 170; *Kopp* v. *Reiter,* 146 id. 437; *McCon-
nell* v. *Brillhart,* 17 id. 354.) The contract cannot rest
partly in parol and partly in writing. While there is testi-
mony in the record that Bradstreet had a conversation with
Seyfarth and Stein and that they agreed among themselves
that Stein was to be substituted for Seyfarth as the pur-
chaser, there is nothing in the writings to indicate that this
information was communicated to McKinney or that he
agreed to such an arrangement. McKinney by his tele-
grams agreed to a sale to Seyfarth on the condition that
he agree to a building restriction to be drawn by McIlvaine.
Whether Seyfarth accepted this offer does not appear, but
for the purposes of this case we shall assume that he did.
When Bradstreet learned that the property was to be sold
by Seyfarth to Stein he seemed to understand that there
might be objections to Stein becoming the owner of the
property. He wired McKinney that Seyfarth planned to
build for Stein, but urged McKinney to complete the sale
to Seyfarth notwithstanding the fact that Stein was ulti-
mately to become the owner of the property. Bradstreet
did not say in his telegram that McKinney was to sell the
property directly to Stein, and in his reply McKinney clearly
indicated that he understood the sale was to be made to
Seyfarth. McKinney did not at any time agree, in writing,
to sell his property to Stein, and so the second position
taken by appellant is not tenable.

Appellant argues that McKinney has waived his right
to rely upon the Statute of Frauds as a defense because he

did not assert this defense when he was requested to carry out the contract. Appellant does not cite any authority in support of this proposition and we are of the opinion that none can be found. While a party to a contract for the sale of real estate may rely upon the Statute of Frauds as an excuse for not carrying out his contract, the fact that the contract was not in writing would seldom, if ever, be assigned by the party sought to be charged as a reason for refusing to perform. The reason back of a refusal is usually dissatisfaction with the price fixed by the contract, objection to dealing with the other party to the contract, disagreement concerning the terms and conditions of the sale, or some other reason personal to the party refusing to perform. An oral contract for the sale of real estate is not void and most of such contracts are performed. In order to prevent fraud and perjury in the enforcement of such contracts our statute requires that they be evidenced by a writing signed by the party to be charged. The statute does not vitiate the oral contract but merely denies the right to compel its performance. The party sought to be charged on an oral contract is under no obligation to raise the question of want of writing until the other party seeks the aid of a court to enforce the contract. This court has held that a party may rely upon the Statute of Frauds as a defense notwithstanding the acceptance of a part of the purchase price. (*Kelly* v. *Fischer,* 263 Ill. 184; *Koenig* v. *Dohm,* 209 id. 468.) The fact that a man refuses to carry out an oral contract to sell land, whatever the reason assigned for his refusal, or whether he assigns any reason at all, is not such a fraud as relieves against the application of the statute.

The decree of the circuit court is affirmed.

*Decree affirmed.*