D. E. GALLAGHER *v.* WASHINGTON COUNTY SAVINGS, LOAN AND BUILDING COMPANY

(No. 9410)

Submitted April 13, 1943. Decided June 1, 1943.

*W. H. Wolfe, Robert B. McDougle* and *K. C. Moore,* for appellant.

*Wm. Bruce Hoff,* for appellee.

RILEY, PRESIDENT:

D. E. Gallagher filed his bill in equity in the Circuit Court of Wood County against Washington County Savings, Loan and Building Company, an Ohio corporation, praying for the specific performance of an allegedly enforcible contract for the sale by defendant to plaintiff of a dwelling house and lot situate in Wood County near Williamstown, known as the "Oesterle property". This appeal is from a decree directing defendant to convey title to plaintiff upon the payment by the latter of six thousand dollars, the alleged purchase price, appointing a special commissioner to execute and deliver to plaintiff a deed in the event of defendant's failure to comply, and commanding the Sheriff of Wood County, upon the request of plaintiff, or his counsel, to deliver possession of the property to the plaintiff, which proposed action of the sheriff the decree provides "shall operate as and shall be in lieu of the issuance and execution of a formal writ of possession".

The instrument, which is the basis of this suit, dated March 29, 1940, was prepared in duplicate at plaintiff's request by an officer of a Parkersburg bank. Both copies, except for the signatures are identical, and read as follows:

### "SALES CONTRACT

"I agree to purchase the following described property for the sum of Six Thousand (6,000.00) Dollars: less deposit of $50.00

"Description:

"Hope Osterle property, eight rooms, white brick, green tile roof, about one acre ground, located on Route ⚹21, about one mile above Boaz.

"On the following terms:
Subject to the delivery by the owner of a general Warranty Deed free from all encumbrances, on or before May 1, 1940. Taxes are to be paid by Washington County Bldg. & Loan. Possession of the property to be granted on delivery of the Deed.

"Unexpired fire insurance premium to be prorated.

"Taxes are to be paid for the 1st quarter of 1940.

"In evidence of my good faith in carrying out the above contract I herewith deposit with the Seller the sum of $50.00 fifty dollars, to be returned to me if for any reason the Seller fails to deliver the good and sufficient Deed for the property.

"Date Mar. 29, 1940".

One copy, identified in the record as "Exhibit No. 2", bears the signature of plaintiff "D. E. Gallagher", and the other, "Exhibit No. 3", is signed "H. H. Garber (Agent)".

Garber is a resident of West Virginia and licensed as a real estate broker under the laws thereof. Prior to the negotiations which culminated in the preparation and signing of the alleged contract, he had been authorized by defendant, acting through one Porter, its real estate agent, and by formal action of its board of directors, to sell the property to one Dieter for six thousand dollars, of which fifteen hundred dollars was to be paid in cash and the balance in deferred payments. The manner in which Garber first became connected with the proposed sale of the property is clearly portrayed by Porter's testimony. On March 4, 1940, Garber interviewed Porter concerning the properties in West Virginia owned by defendant. During the course of the interview, he was advised that defendant would not list its properties with a real estate agent or broker; that defendant had seventy-five hundred dollars in the property; and that if

Garber should find a purchaser to whom a sale was approved by defendant's entire board of directors, a commission would be paid on the sale price. On the other hand, Garber testified that, on the occasion of March 4, 1940, interview, Porter authorized him to sell the property for six thousand dollars. Shortly thereafter Garber advertised the property for sale, together with other real property in West Virginia belonging to defendant, and succeeded in interesting Dieter in the possible purchase of the property for six thousand dollars, fifteen hundred dollars to be paid in cash and the balance in deferred payments, and, as suggested, obtained authority from defendant, acting through its board of directors, to sell the property to Dieter on that basis.

Porter's authority as defendant's real estate agent, according to his uncontradicted testimony, was "to collect rents, repair the buildings, find buyers for its different properties, and report to the directors". In answer to the question whether at any time he had power to authorize anybody else to sell the property at any price, he testified, "Well, I tell you, if anybody asked me I always stated to them about what we had in it, but I didn't know how much less than that would buy it; that the only thing they could do would be to meet their offer, and I would take it up with the Board of Directors".

The record further discloses that on March 9, 1940, plaintiff learned from his sister, Blanche Gallagher, then Dieter's secretary, that the Oesterle property was for sale at six thousand dollars, that Garber was undertaking to sell it to Dieter at that price, and that the latter did not intend to buy it. On March 13, 1940, plaintiff, accompanied by his wife, went to Williamstown to see Garber. He was informed by the latter's father that he would have his son, who was not at home, call upon him. The Gallaghers, on their return to Parkersburg, made an effort to inspect the property but were refused admittance by Mrs. Oesterle, the occupant and former owner, who advised plaintiff that the property was not

for sale. Upon arriving at Parkersburg, Mrs. Gallagher called the defendant's Marietta office, from the office of the Garrity Real Estate Company of which she was secretary. According to Mrs. Gallagher's testimony, a woman answered the telephone and informed her that Mr. Porter, who usually had charge of the property, was busy at the county treasurer's office and that she "might call Mr. Garber at Williamstown". In response to the question, "What did she give you to understand Mr. Garber was doing", the witness gave the very indefinite answer, "That Mr. Garber was handling the property". Price was not mentioned during this telephone conversation. About the same time Garber informed Gallagher at the latter's office that he thought he had sold the property to Dieter, but if the latter did not buy it, he would be back. Some time later during the same month, Garber informed plaintiff that the sale to Dieter had failed, and that he had made arrangements to show the property to plaintiff. On March 28, 1940, plaintiff, Mrs. Gallagher, and Garber met at and went through the Oesterle property. This inspection of the property was made after one, Asa D. McCoy, one of defendant's directors, at Garber's request, had arranged through Porter for the interested parties to view the premises. In this regard Mrs. Oesterle testified that "About 9:30 one morning he [Porter] called me and told me the property was for sale and in the hands of Mr. Garber of Williamstown".

On March 29, 1940, Garber, purporting to act for defendant, agreed to sell the property to plaintiff for six thousand dollars and, according to the latter's testimony, the two papers identified as Exhibits Nos. 2 and 3 were prepared and signed, and plaintiff gave his check in the amount of fifty dollars payable to defendant. On the same day Garber gave "the copy of the Contract" to McCoy at defendant's Marietta office. McCoy told Garber to take the papers to Porter who, in turn, directed him to take them to one George W. Strecker, defendant's president and counsel, none of whom, at that time,

made any claim that Garber had exceeded his authority. He was advised by Strecker that the matter would be taken up the following night at the regular weekly meeting of defendant's board of directors. On that night Garber went to defendant's office and, after the board meeting was over, was advised by Strecker, "No, we won't sell it for that". On the night of April 2, 1940, plaintiff and Garber saw Porter at his Marietta residence, on which occasion Porter claimed that plaintiff was not Garber's prospect, but was the client or prospect of Garrity Real Estate Company of Parkersburg, and he urged that said company be contacted "before we can do anything about it * * * and find ourselves in the middle".

There is much conflict in the evidence as to the identity of the paper, claimed to be the alleged contract signed by plaintiff, which Garber testified he presented, in turn, to McCoy, Porter and Strecker. This question may or may not be material, depending upon whether Garber, in the circumstances of this case, had authority, either actual or apparent, to bind defendant as to the instant transaction. It may be well to note that, except as to Garber's authority to sell to Dieter, the record does not show that defendant's board of directors by formal action gave Porter authority to sell or to delegate Garber to sell the property to Gallagher for six thousand dollars in cash; nor does it contain any evidence that the board directly authorized Garber to make the alleged sale sought to be enforced.

The record further discloses that on August 14, 1940, defendant entered into an agreement with Ethel Witsman for the sale of the property involved in this suit on a deferred payment basis. This agreement gave the purchaser the right to immediate possession. On September 3, 1940, Mrs. Witsman entered upon the property, and has resided there since that time. Evidently relying upon her agreement, she repaired and improved the property at a cost of about fifteen hundred dollars. She was not made a party to this suit, yet, as heretofore stated, the decree provides for her eviction at the hands of the

Sheriff of Wood County without the issuance and execution of a formal writ of possession. Defendant claims that if the alleged contract of March 29, 1940, is enforcible and binding upon the defendant, the decree nevertheless is erroneous in that it undertakes to adjudicate Mrs. Witsman's rights without allowing her a day in court.

We have not attempted in this opinion to state in detail all of the facts disclosed by the record. To do so would serve no useful purpose. The foregoing statement of facts fairly raises for consideration the controlling question in this case, that is: Whether Garber had actual or apparent authority to enter into on behalf of the defendant the alleged contract of March 29, 1940, and thereby bind said defendants.

Based upon the conflict in the evidence involving an alleged telephone conversation between someone at the offices of Garrity Real Estate Company and Porter, defendant claims that plaintiff was not Garber's client or prospect, but its own prospect with whom it was dealing on the basis of a seven thousand dollar purchase price. Porter testified that such conversation took place on March 13, 1940. Dr. Gallagher and Mrs. Gallagher's two brothers, with whom she was associated in the operation of the business of the Garrity Real Estate Company, disclaimed any such telephone conversation.

The facts that defendant is an Ohio corporation, Garber a real estate broker residing. in West Virginia and licensed under the laws of that State, and the alleged contract was executed in West Virginia and purports to sell West Virginia real estate, do not raise a difficult question of conflict of laws. As between a principal and a third party, the law of the State in which the agent is actually or apparently authorized to act for the principal determines whether the act done by the alleged agent on behalf of the principal imposes a contractual duty upon the latter. Restatement of the Law, Conflict of Laws, Section 345; and clearly the law of this State applies in this case which involves an alleged contract

made in West Virginia for the sale of real estate situate in West Virginia. 11 Am. Jur., Conflict of Laws, Sections 33-37.

In the consideration of the question of Garber's authority to execute the instrument of March 29, 1940, we have kept in mind that the authority of an agent to bind his principal upon a contract, required to be in writing under Code, 36-1-3, need not be in writing. *Kennedy* v. *Ehlen,* 31 W. Va. 540, pt. 1 syl., 8 S. E. 398; *Conway & Smith* v. *Sweeney,* 24 W. Va. 643; *Yerby* v. *Gregsby,* 9 Leigh 387.

At the time of his first contact with defendant, Garber was a real estate broker, residing in West Virginia and licensed under the laws thereof. He was neither an officer nor a general agent of defendant to sell real estate. In fact the Dieter transaction was the only one prior to that under consideration which he had with defendant. Being a real estate broker, he was at most defendant's special agent to sell the Oesterle property, and could not bind defendant in the absence of actual or apparent authority to do so. Generally a real estate broker is held to be one who negotiates the sale of real property, and whose business is that of finding a purchaser who is willing to buy on the terms fixed by the owner. *McCullough* v. *Hitchcock,* 71 Conn. 401, 42 A. 81; *Brauckman* v. *Leighton,* 60 Mo. App. 38, 42; *Crews* v. *Sullivan,* 133 Va. 478, 113 S. E. 865; *Brown* v. *Gilpin,* 75 Kan. 773, 90 P. 267; *Larson* v. *O'Hara,* 98 Minn. 71, 107 N. W. 821, 116 Am. St. Rep. 342, 8 Ann. Cas. 849. Whatever authority Garber had to sell the Oesterle property to plaintiff for six thousand dollars, he obtained through Porter, for this record, as stated, discloses that by no action of defendant's board of directors was such authority ever extended to him. It must be held that Garber's actual authority did not extend beyond that vested in Porter. What authority then did Porter have? He was defendant's "real estate agent", but his authority did not extend beyond that of collecting rents, repairing buildings, obtaining purchasers for property, and reporting to the board of directors. He had no authority to sell defend-

ant's real estate and bind defendant to a contract of sale. He had no express authority to appoint a subagent who could bind defendant in the sale of its real estate, and no implied authority because he himself had no authority to sell. Though the rule may be otherwise as to an apparent agent, the actual authority of a subagent to sell the property of an owner and bind such owner under a contract of sale can be no greater than the source of the authority itself. It, therefore, is unnecessary for us to consider the applicability of the rule governing the authority of subagents as stated in *Meadows* v. *American Eagle Fire Insurance Co.,* 104 W. Va. 580, pt. 1 syl., 140 S. E. 552.

While it is true, as counsel for plaintiff have suggested, that a corporation necessarily must act in its business transactions with third parties, through an officer or agent, that of itself does not dispense with the rule that in this State a corporation acts in the first instance through its board of directors, except in cases of ratification. In *Mack Realty Co.* v. *Beckley Hardware & Supply Co.,* 107 W. Va. 290, 148 S. E. 122, this Court held (pt. 1 syl.): " * * * What the directors do for the corporation must be done as a board; a majority of them when acting in their individual capacity cannot bind the corporation. The board of directors generally causes the executive business of the corporation to be done by agents who are denominated the officers of the corporation. Such officers cannot bind the corporation by an act not within their authority express or implied". In that case it was held that the authority to contract for the sale of a mercantile corporation's real estate is not imputed to the chief executive officer of the corporation merely by reason of his position, though a rebuttable presumption arises from a contract signed and the corporate seal affixed by such officer purporting to act for the corporation. The instrument of March 29, 1940, however, lacks such formality. In *Cobb* v. *Glenn Boom & Lumber Co.,* 57 W. Va. 49, 49 S. E. 1005, 110 Am. St. Rep. 734, it was held that the secretary of a corporation, as such, has no authority

to make a contract for the sale of the corporation's real estate. In that case this Court distinctly held (pt. 3 syl.) that such a contract is unenforcible "unless it appears that the secretary had express authority to make such contract, or had been clothed with apparent authority by the corporation to do so, or that the corporation had acquiesced in or ratified the sale". It follows that Garber had no actual authority to bind defendant to the alleged sale sought to be enforced.

But counsel for plaintiff claim that Garber was clothed with apparent authority to sell the property to plaintiff for six thousand dollars. Evidently counsel assume the position that Garber was at least an apparent agent or, as commonly designated, an agent by estoppel or representation. Of course, an apparent agency is not necessarily an agency in fact. It is only such a state of facts from which one by reason of his representations or the holding out of another as his agent is estopped to deny the existence of the agency, and is bound by the acts of such other person acting within the apparent scope of his authority. "An apparent agent is a person who, whether or not authorized, reasonably appears to third persons, because of the manifestations of another, to be authorized to act as agent for such other". 1 Restatement of the Law, Agency, Section 8, Comment a. This record, however, is devoid of any substantial evidence that Garber had the apparent authority to sell the property in question and to execute on behalf of defendant the instrument of March 29, 1940. He had the right, through prearrangement with defendant, to show the property to Gallagher, but such right is incident to the activities of every real estate broker. Of itself it does not amount to a representation that a broker has the authority to sell the property exhibited and enter into a contract in furtherance thereof, binding the owner, and containing provisions which, as in the instant case, the owner has neither approved nor discussed with the prospective purchaser or with Garber, its alleged agent. The fact that, as Mrs. Oesterle testified "About 9:30 one morning he

[Porter] called me and told me the property was for sale and in the hands of Mr. Garber of Williamstown" is of little importance as bearing upon the question of apparent agency, for this was not brought to Gallagher's attention. If it had been, it would not have clothed Garber with apparent authority to bind defendant by contract. It would not do for us to say that a property owner by merely holding out an alleged agent as having the right to show property to a prospective purchaser thereby makes such representation of authority as would bind defendant, as the memorandum of March 29, 1940, purports to do: (1) to pay the first quarter taxes for 1940, and (2) to prorate the premium for an unexpired fire insurance policy which defendant evidently had on the Oesterle property. In this jurisdiction "one dealing with an agent is bound to know the agent's authority". *Allen v. Southern West Virginia Oil & Gas Corp.*, 104 W. Va. 517, pt. 1 syl., 140 S. E. 529; *Union Town Grocery Co. v. Dawson*, 68 W. Va. 332, pt. 1 syl., 69 S. E. 845; *Payne v. Jenkins*, 144 Va. 126, 131 S. E. 209, 48 A. L. R. 628, notes 634-653.

The foregoing is decisive of this case and renders moot the other questions raised by counsel.

It is therefore unnecessary that we decide the questions of the identity of the alleged instrument of March 29, 1940, whether it is enforcible in a court of equity, whether plaintiff was Garber's client or prospect or its own obtained through the Garrity Real Estate Company, and the effect of the omission of Mrs. Witsman as a party defendant.

On this record we are of the opinion that Garber had no authority, actual or apparent, to sell the property to plaintiff on the terms contained in the alleged contract sought to be enforced.

Therefore, the decree of the Circuit Court of Wood County is reversed, and plaintiff's bill dismissed.

*Reversed.*