(No. 33880.—

Ray E. Thompson, as Trustee in Bankruptcy of Peter J. Black, Appellant, *vs.* Lester Wiegand *et al.,* Appellees.

*Opinion filed May 23, 1956—Rehearing denied September 24, 1956.*

Paul B. Nichols, of Quincy, for appellant.

Henry W. Pollock, and John T. Ennis, both of Quincy, for appellees.

Mr. Justice Bristow delivered the opinion of the court:

This is a direct appeal from the circuit court of Adams County wherein a decree was entered denying partition of

certain real estate. A freehold is necessarily involved which gives us jurisdiction.

Plaintiff is the trustee in bankruptcy of Peter J. Black, who will be hereinafter referred to as the bankrupt.

The complaint, as amended, prays for partition of a 188-acre acre tract of land described as follows: "All of the Southeast Quarter of Section Twenty-seven (27) and all of the South One-half (½) of the Northeast Quarter of Section Twenty-seven (27), except the North Fifty-two (52) acres thereof, all in Township Two (2) South of the Base Line and Range Nine (9) West of the Fourth Principal Meridian, situated in the County of Adams and the State of Illinois," held in fee simple by the bankrupt and one Lester Wiegand, herein called defendant, as tenants in common. Other parties were joined as defendants, but their interests are not involved in this appeal.

Defendant's answer, as amended, alleges that the bankrupt had contracted to convey to the defendant his undivided one-half interest in the property described in the complaint upon the payment by the defendant to the bankrupt of the sum of $100 per acre; that the contract was entered into on November 24, 1948; that the contract was reduced to writing, signed by the bankrupt and delivered to and accepted by the defendant; that the defendant had paid $7235.46 on the contract; that $2164.54 remains unpaid thereon; and that the single copy of the written instrument evidencing the agreement had been lost and all efforts to find the same were unavailing. In his answer, defendant prayed that the plaintiff be required to deliver to him a deed for the said property in accordance with the terms of the contract upon the payment of the sum of $2164.54. He did not include a counterclaim in his answer. In his reply, plaintiff denied the execution and delivery of the contract and any payment thereon.

The cause was referred to a special master in chancery, who found that the terms of the alleged contract were in-

definite, vague and uncertain; that the establishment of the contract was dependent upon verbal testimony; that the defendant did not take actual possession of the premises and did not make any improvements thereon; and that the supposed contract is not clear and certain in all terms so as to comply with the Statute of Frauds. The master further found that the total credit for crops for 1949 to 1953, inclusive, delivered to the bankrupt's elevator, claimed by the defendant, is actually less than the cost of his original undivided one-half interest in the 275 acres which the bankrupt and he had purchased and of which the property herein involved is a part. Based upon these findings, the master concluded that the plaintiff had established his right to partition of the real estate described in the complaint and recommended that a decree of partition be entered. The master overruled defendant's objections to his findings, which, in substance, were that they were contrary to the law and evidence.

The chancellor ordered the objections to the master's report to stand as exceptions and entered a decree in which he sustained the exceptions of the defendant, found the master's findings in error, reversed the same and remanded the cause to the master to determine the amount of the grain and proceeds paid under said contract since November 24, 1948, to the bankrupt and to determine the amount of taxes paid by the defendant and further, to find the amount still due under said contract, and to find the amount due the defendant because of payment of drainage and general taxes by the defendant. The costs of the suit were assessed against the plaintiff. The decree found that the defendant is the equitable owner of the real estate described in the complaint and that he is entitled to a deed from the plaintiff upon the completion of the terms of said contract.

Five days after the decree was entered, plaintiff sought to amend his reply to set up the defense of the Statute of Frauds to cause the pleadings to conform to the proof

adduced. The chancellor denied this motion stating that those points had already been raised and argued before he had made his final announcement in regard to the merits of the controversy and the decree was signed sustaining the exceptions to the master's report.

To satisfy the Statute of Frauds, the writing itself must contain on its face or by reference to other writings, the names of the vendor and of the vendee, a description of the property sufficiently definite to identify the same as the subject matter of the contract, the price, the terms and conditions of sale, and the signature of the party to be charged. *Stein* v. *McKinney,* 313 Ill. 84, 144 N.E. 795; *Elwell* v. *Hicks,* 238 Ill. 170, 87 N.E. 316.

The undisputed testimony indicates that the defendant is a farmer, landowner and custom machine operator who did work for the bankrupt, and that the bankrupt was a grain elevator operator. The defendant and the bankrupt had purchased 275 acres in two tracts of 87 and 188 acres, respectively, for the sum of $15,000 on which they had paid $5000 and given a purchase money mortgage for the balance and acquired title as tenants in common by a deed dated August 16, 1948, and recorded September 24, 1948. The defendant delivered grain from his Illinois and Missouri farming operations to the elevator operated by the bankrupt, and the bankrupt charged the defendant's account at his elevator for $2500, being his part of the down payment on the 275 acres at the time that the purchase thereof was made. The bankrupt made the mortgage payments, paid the taxes, instructed the tenant and handled all of the business affairs relating to the property in question. The defendant did not draw any of the proceeds from the sale of any of the grain from the land in question from the year 1949 until the year 1953, during which time no written reports were rendered to him by the bankrupt, and the trustee found no record of these transactions among the books of the bankrupt, but the defendant obtained estimates

of the amount of grain that was raised on the place from the tenant after this partition suit was filed. The record also shows that by a deed dated July 31, 1950, the defendant and the bankrupt conveyed the 87-acre tract to George E. Carey and Louise M. Carey, to whom they sold the same for $100 per acre, and that the bankrupt applied the $8700 proceeds from said sale and other funds on the purchase money mortgage and obtained a release thereof. A petition in bankruptcy was filed against the bankrupt on August 17, 1953, and for a while thereafter he could not be found, and on September 4, 1953, plaintiff was elected trustee in bankruptcy. Sometime thereafter, before the bankrupt was found by the plaintiff, the plaintiff talked with the defendant at the West Quincy elevator and the defendant said in substance to the plaintiff, "that he was buying that land with his grain as he raised it and that Mr. Black was taking his crop to pay off this land—he did not have anything to go by." About December, 1953, a short time before the filing of this partition suit, the defendant called upon the trustee to ask if there was any way that he could complete the buying of the land without partition.

Plaintiff objected to the testimony of the defendant and the bankrupt wherein they stated that about the time of the sale of the 87 acres to George E. Carey, they verbally agreed that the undivided one-half interest of the bankrupt was to be conveyed to the defendant by the bankrupt upon the payment by the defendant to the bankrupt of the sum of $100 per acre; that the agreement was reduced to writing by the bankrupt at the Park Hotel, signed by him and delivered to the defendant, who accepted the same; that the defendant cannot find the writing; and that only one copy was made.

We shall not be delayed with a consideration of the dispute arising herein with reference to the pleadings. The plaintiff should have the benefit of the defense if the questioned contract is violative of the Statute of Frauds and

the defendant should under the pleadings be accorded the relief sought, if the real-estate contract is established and is not vulnerable to the defenses asserted.

The evidence also showed that the bankrupt listed an undivided one-half interest in the 188 acres in his sworn schedule of assets filed in the bankruptcy proceedings and that the defendant failed to respond to a show-cause order directed to him and others to answer and state what interest he claimed in the undivided one-half interest of the bankrupt in the 188 acres; that he never filed an answer or made any claim as to the bankrupt's interests in the bankruptcy court. This seeming inconsistency in the position of the bankrupt and the defendant is reasonably explained. The bankrupt stated that he listed a half interest in the 188-acre tract as his land, because the title was still in his name. The defendant acknowledged that he had received a notice to file claims if he had any against the bankrupt estate, but that it never occurred to him that his contract to purchase real estate was such a claim that ought to be asserted under that notice. Both explanations are reasonable and plausible. The testimony of Black and Wiegand is uncontradicted. They both testified that the price agreed upon was $100 per acre, the identical price received by them from the Careys for an 87-acre tract of their joint holdings. According to its terms, Black was to receive the proceeds from the land and apply Wiegand's share on the purchase price. They both testified that the sale took place at the Park Hotel where Black was residing, and that the terms of the sale were written upon a piece of hotel stationery signed by Black. The contract was clear and specific as to the date, the land involved, the purchase price and the manner of payment. In addition to the parties to the contract, Ezra Baker, the tenant, testified that all the grain inclusive of Wiegand's share was delivered to Black. The record also shows that Wiegand discussed his claim with Thompson, the trustee in bankruptcy. A fair interpretation

of their testimony demonstrates that the defendant at all times consistently claimed rights under his lost written contract.

Assuming that the plaintiff properly raised the defense of the Statute of Frauds, we are of the opinion the lost written memorandum, so conclusively established by uncontradicted evidence, met all of its requirements. In *Ullsperger* v. *Meyer*, 217 Ill. 262, specific performance was sought to enforce this contract: "Chicago, Illinois, January 8, 1904. Received of Anton Ullsperger $100 on said purchase of the property No. 1031 Milwaukee ave., at the price of $14,000. [Signed] C. Meyer." Therein it was held that a written memorandum of a contract for the sale of land, signed by the party to be charged and containing the names of the vendor and vendee, a description of the property sufficient to identify it and the terms and conditions of the sale, is sufficient on its face to satisfy the requirements of the Statute of Frauds, and further, the court held that a verbal acceptance by a proposed vendee renders a memorandum for the sale of the land, which was signed only by the vendor, mutual and binding upon both parties, and further, when no time for completion of the contract is provided, the law will imply a reasonable time under all the circumstances.

We are therefore of the opinion that the decree entered herein by the court below should be affirmed.

*Decree affirmed.*